# WEBSTER ELECTRIC COMPANY *v.* SPLITDORF ELECTRICAL COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 93. Argued March 6, 7, 1924.—Decided April 7, 1924.

1. Upon a review by certiorari, the Court is not called upon to consider questions not raised by the petition for the writ.  P. 464.
2. Claims 7 and 8 of Patent No. 1,280,105, issued to Kane, September 24, 1918, for a rigid unitary and integral support for mounting parts of an electrical ignition device, *held* void because of laches in presenting them to the Patent Office.  P. 465.
3. The rule that a reissue patent, expanding the patentee's original claims, will be invalidated by a delay of two years in applying for it unless special circumstances be proven justifying a longer delay, is applicable also to patents issued on divisional applications. *Chapman* v. *Wintroath,* 252 U. S. 126, explained.  P. 469.

283 Fed. 83, affirmed.

CERTIORARI to a decree of the Circuit Court of Appeals, in a patent infringement suit, reversing the District Court and directing dismissal of the bill.

*Mr. Albert G. McCaleb* and *Mr. Lynn A. Williams* for petitioner.

*Mr. Charles L. Sturtevant,* with whom *Mr. Eugene G. Mason, Mr. David B. Gann* and *Mr. Ballard Moore* were on the brief, for respondent.

*Mr. Edwin J. Prindle,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This writ brings up for review the decree of the court below in a patent suit, 283 Fed. 83, reversing a decree of the Federal District Court for the Northern District

of Illinois, 255 Fed. 907, and directing a dismissal of the bill. Three patents were involved. The decision in respect of two of them turned upon the question whether a license contract between the patentees, Henry and Emil Podlesak, and petitioner, had the effect of precluding an assignment of patent rights made by the Podlesaks to respondent. But the petition upon which the writ was granted challenged the decision below only in respect of the third patent; and we are not called upon to consider the contentions now advanced as to the other. *Alice State Bank* v. *Houston Pasture Co.*, 247 U. S. 240, 242.

The bill alleges that the Splitdorf Electrical Company had infringed claims 7 and 8 of Kane patent No. 1,280,105, issued September 24, 1918, for a rigid unitary and integral support for mounting the various parts of an electrical ignition device. The original application was filed by Kane February 2, 1910, on which patent No. 1,204,573 was granted November 14, 1916. On October 24, 1914, Kane endeavored to amend his application by introducing six claims copied from Milton's patent, issued May 12, 1914, for the purpose of securing an interference. The amendment was refused and Kane was directed by the examiner to file a divisional application if he desired to contest an interference with Milton. This was done. The Webster Company, however, acquired the rights of both Milton and Kane and through their attorneys conducted the proceedings for both sides in the Patent Office, resulting in an award of priority in favor of Kane.

Subsequently, in 1915, Kane filed a divisional application, presenting nine additional claims, copied from Podlesaks' patent No. 1,055,076, issued March 4, 1913, and reissue patent No. 13,878, dated February 9, 1915; all of which claims were ultimately decided in favor of the Podlesaks. Thereafter, on June 17, 1918, an amendment was filed embracing the new and broader claims here in question, which were allowed upon an ex parte showing and,

as already stated, patent issued September 24, 1918, to the petitioner, to whom all rights had been assigned. The original bill was filed in 1915; and claims 7 and 8 were brought into the suit by a supplemental bill filed October 25, 1918.

It will thus be seen that claims 7 and 8 were for the first time presented to the Patent Office, by an amendment to a divisional application eight years and four months after the filing of the original application, five years after the date of the original Podlesak patent, disclosing the subject matter, and three years after the commencement of the present suit. A comparison of these claims, as set forth in the patent, with the claims in the original application, to say the least, leaves in doubt the question whether they were not so materially enlarged as to preclude their allowance on the original application. *Railway Co.* v. *Sayles,* 97 U. S. 554, 563; *Hobbs* v. *Beach,* 180 U. S. 383, 396; *Dunham* v. *Dennison Manufacturing Co.,* 154 U. S. 103, 110; *Michigan Cent. R. Co.* v. *Consolidated Car-Heating Co.,* 67 Fed. 121, 126. But this aside, the evidence establishes to our satisfaction that Kane did not originally intend to assert these amended claims, because he considered their subject matter one merely of design and not of invention; and the inference is fully warranted that the intention to do so was not entertained prior to 1918. During all of this time their subject matter was disclosed and in general use; and Kane and his assignee, so far as claims 7 and 8 are concerned, simply stood by and awaited developments. We are not here dealing, therefore, with the simple case of a division of a single application for several independent inventions, Patent Office Rules 41 and 42; *Bennet* v. *Fowler,* 8 Wall. 445, 448; *American Laundry Machinery Co.* v. *Prosperity Co., Inc.,* 295 Fed. 819, but with a case of unreasonable delay and neglect on the part of the applicant and his assignee in bringing forward claims broader than those

97851°—24——30

originally sought. The repeated assertion of interferences in narrower terms, resulting in delays incident to their determination, affords no just excuse for the failure to assert the broader claims, 7 and 8, at an earlier date. The subject matter of these claims is not of such complicated character that it might not have been readily described in the original application or in one of the subsequent applications—in 1915, for example,—as it was described in 1918; and the long delay of Kane and his assignee in coming to the point tends strongly to confirm the view that the final determination to do so was an exigent afterthought, rather than a logical development of the original application. We have no hesitation in saying that the delay was unreasonable, and, under the circumstances shown by the record, constitutes laches, by which the petitioner lost whatever rights it might otherwise have been entitled to.

We do not overlook the importance of not applying so narrowly the patent law as to discourage the inventor from exercising his creative genius, or the manufacturer or capitalist from assisting in the necessary work of bringing the invention into beneficial use; but it is no less important that the law shall not be so loosely construed and enforced as to subvert its limitations, and bring about an undue extension of the patent monopoly against private and public rights. In suits to enforce reissue patents, the settled rule of this Court is that a delay for two years or more will " invalidate the reissue, unless the delay is accounted for and excused by special circumstances, which show it to have been not unreasonable." *Wollensak* v. *Reiher,* 115 U. S. 96, 101. In that case it appeared that the reissue patent was issued to complainant December 26, 1882, upon the surrender of the original patent of March 10, 1874. The Patent Office decided that because of special circumstances the applicant was not guilty of laches; but this Court held otherwise. The claims alleged

to have been infringed were expansions of the original claims as embraced within the invention set forth in the original patent. This Court (pp. 99–100) said:

" It follows from this, that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and expected of men, in the management of their own interests, in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it.

" Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches which in equity disables the party, who seeks to revive a right which he has allowed to lie unclaimed, from enforcing it to the detriment of those who have, in consequence, been led to act as though it were abandoned.

" This general doctrine of equity was applied with great distinctness to the correction of alleged mistakes in patents, by reissues, in the case of *Miller* v. *Brass Company,* 104 U. S. 350. It was there declared, that where the mistake suggested was merely that the claim was not as broad as it might have been, it was apparent upon the first inspection of the patent, and, if any correction was desired, it should have been applied for immediately; that the granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void; that, in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied, and no one should be relieved who has

slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent; and that when this is a matter apparent on the face of the instrument, upon a mere comparison of the original patent with the reissue, it is competent for the courts to decide whether the delay was unreasonable and whether the reissue was, therefore, contrary to law and void.

" This doctrine has been reiterated in many cases since, and at the present term has been reconsidered and emphatically repeated as the settled law, in the case of *Mahn* v. *Harwood,* 112 U. S. 354, where it is said, by Mr. Justice Bradley, delivering the opinion of the court: ' We repeat, then, if a patentee has not claimed as much as he is entitled to claim, he is bound to discover the defect in a reasonable time, or he loses all right to a reissue; and if the Commissioner of Patents, after the lapse of such reasonable time, undertakes to grant a reissue for the purpose of correcting the supposed mistake, he exceeds his power, and acts under a mistaken view of the law; and the court, seeing this, has a right, and it is its duty, to declare the reissue *pro tanto* void, in any suit founded upon it.' It was also there said, that, while no invariable rule can be laid down as to what is reasonable time within which the patentee should seek for the correction of a claim which he considers too narrow, a delay of two years, by analogy to the law of public use before an application for a patent, should be construed equally favorable to the public, and that excuse for any longer delay than that should be made manifest by the special circumstances of the case."

In *Ives* v. *Sargent,* 119 U. S. 652, 661, the duty of the patentee to examine his letters patent within a reasonable time to ascertain whether the latter fully covered his invention was reiterated. And where this was neglected for a period of three years, when, finding the real invention

had been infringed but without infringing the patent as originally granted, an application for a reissue was made and allowed, it was held that the patentee was guilty of laches and the reissue came too late. The doctrine of *Wollensak* v. *Reiher* was restated (p. 662) to the effect that while no invariable rule can be laid down, a delay of two years, by analogy to the law of public use before an application for a patent, will be fatal unless excuse for a longer delay shall be made manifest by the special circumstances of the case. See also *Topliff* v. *Topliff*, 145 U. S. 156; *Wollensak* v. *Sargent*, 151 U. S. 221.

While the analogy between the case of a reissue patent and that of copying for interference is not always an exact one, it is sufficiently so, as applied to the present case, to make these decisions pertinent; and the principle which they announce is controlling. We brought this case here by certiorari because of the claim that the decision of the Court of Appeals rested primarily on *Chapman* v. *Wintroath*, 252 U. S. 126; and the contention was that the opinion there had been misunderstood and misapplied.[1] The question as thus presented, was important and one which it was thought should be authoritatively determined. The court below finally put its decision substantially on the ground which we have stated as the basis of our conclusion. But before doing so, it said (283 Fed. 93): "Appellants contend, however, and we agree with the courts that have passed upon the question, that the effect of the holding [in the *Wintroath Case*] is to fix the period during which such application must be filed at *two* years from the date of the issuance of the other patent. No other deduction can fairly or logically be drawn from the discussion of the question in that opinion." But *Chapman* v. *Wintroath* is not to be so narrowly construed.

[1] See also *American Laundry Machinery Co.* v. *Prosperity Co., Inc.*, 294 Fed. 144; reversed by a decision of the Circuit Court of Appeals for the Second Circuit, cited *supra.*

The facts of the case were: The Chapmans filed their application in 1909. The invention was a complicated one and the application met with much difficulty in the Patent Office, and, though regularly prosecuted, no patent had been issued in 1915 when the controversy arose. Wintroath filed an application in 1912. His invention was also elaborate and intricate. Twenty months after this latter application, the Chapmans filed a divisional application in which the claims of the Wintroath patent were copied and an interference was declared. The examiner without hearing evidence, entered judgment in favor of Wintroath on the ground that the failure of the Chapmans to present the interference issue for more than a year after the date of the Wintroath patent constituted laches, and that they were estopped. This decision was reversed by the Commissioner of Patents, and his decision, in turn, was reversed by the Court of Appeals of the District of Columbia, that court holding that the one year period should apply, on the ground that the divisional application was to be regarded substantially as an amendment to the parent application, and that it would be inequitable to permit a longer time than that allowed by Rev. Stats. § 4894, for further prosecution of an application after office action. This Court, in reversing the decision of the Court of Appeals, referred to § 4886, as amended, March 3, 1897, c. 391, 29 Stat. 692, and §§ 4887, 4897 and 4920 of the Revised Statutes, all of which contain provisions for a time limit of two years for filing applications, and said (p. 136): "Thus through all of these statutes runs the time limit of two years for the filing of an application, there is no modification in any of them of the like provisions in Rev. Stats. § 4886, as amended, and no distinction is made between an original and a later or a divisional application, with respect to this filing right."

If this were all, it might justify the conclusion that a hard and fast time limit of two years is to be applied in

every case of a divisional application. But a reading of the entire opinion demonstrates that this conclusion is erroneous. The Court proceeds to say that divisional applications are not to be dealt with in a hostile spirit, but are to be "favored to the extent that where an invention clearly disclosed in an application  .  .  .  is not claimed therein but is subsequently claimed in another application, the original will be deemed a constructive reduction of the invention to practice and the later one will be given the filing date of the earlier, with all of its priority of right." Reference is made to *Wollensak* v. *Reiher, supra,* and other reissue cases, which, as we have seen, adopt the two-year time limit by analogy to the law of public use before application for patent; and, while it is not said in terms, the plain import of the citation of and reliance upon these cases is that the effect of the two years' delay, as recognized in those cases, may be overcome where it "is accounted for and excused by special circumstances, which show it to have been not unreasonable;" and, properly understood, there is nothing in the opinion to the contrary.

Our conclusion, therefore, is that in cases involving laches, equitable estoppel or intervening private or public rights, the two-year time limit *prima facie* applies to divisional applications and can only be avoided by proof of special circumstances justifying a longer delay. In other words, we follow in that respect the analogy furnished by the patent reissue cases.

*Affirmed.*