AMERICAN CHAIN CO., Inc., v. FRANKLIN NEW YORK CO., Inc., et al. SAME v. GRABIE BERGER CO., Inc. SAME v. STEWART—WARNER SPEEDOMETER CORPORATION et al.

District Court, E. D. New York. August 6, 1929.

Nos. 3612, 3616, 3636.

552

Frederick S. Duncan, of New York City, for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for defendants.

CAMPBELL, District Judge. The three above-entitled suits in equity by stipulation were tried together.

They are brought because of alleged infringement of patent No. 1,191,306, issued to Thomas A. Hoover, for bumper for vehicles, dated July 18, 1916, on application filed January 24, 1912; patent No. 1,221,800, issued to Thomas A. Hoover, for automobile bumper, dated April 3, 1917, on a divisional application filed July 12, 1916, of an original application filed January 24, 1912; and patent No. 1,198,246, issued to George Albert Lyon, assignor to Lyon Non-Skid Company, for buffer for motor vehicles, dated September 12, 1916, on a divisional application filed June 30, 1916, on an original application filed April 21, 1913—all of which relate to elongated loop-end spring bar bumpers for automobiles.

The formal defendants are either automobile companies or dealers or jobbers in automobile supplies, located in Brooklyn, and handling Stewart-Warner bumpers manufactured by the Stewart-Warner Speedometer Corporation, a Virginia corporation, with a factory in Chicago, and sold by the Stewart-Warner Speedometer Corporation, a New York corporation.

The defense of these suits is conducted by Stewart-Warner Speedometer Corporation of New York.

The alleged infringing structures are the so-called Stewart-Warner bumpers.

The defendants have interposed the defenses of invalidity and noninfringement.

The Hoover patent, No. 1,191,306, shows two forms of the Hoover invention, and both of these involve the elongated loop-end spring bar feature.

The general features of both forms are the same, and the result produced in the way of shock absorption is the same.

In each the resilient but resistant action of the spring loops and other spring portions of the bumper gradually bring the car to a stop.

This suit is based on claims 1, 3, and 6 of Hoover patent, No. 1,191,306, which read as follows:

"1. In a fender, the combination with a vehicle frame, of a continuous spring arranged transversely in front of the frame, the ends of the spring being bent upon itself to the rear and inwardly, the bends in said spring forming the ends of the fender, and means secured to the frame and to the said ends of the spring at a distance from the said bends and in rear of the main portion of the spring whereby the spring is supported."

"3. A bumper for vehicles comprising a continuous spring buffer bar for extension transversely of the vehicle, said bar having integral spring-supporting members, the said supporting members constituting a continuation of the body member and being extended laterally therefrom, and then rearwardly."

"6. A bumper for vehicles comprising a spring buffer bar for extension transversely of the vehicle, said bar being of continuous spring material throughout the entire length thereof, the ends of the bar being bent first upon itself to the rear and then inwardly to form integral spring supporting members, the bends in said bar forming the ends of the bumper."

And claims 2, 3, 6, and 7 of the Hoover patent, No. 1,221,800, which read as follows:

"2. A spring bumper comprising a front and rear spring bar, said bars being interspaced and positioned parallel with relation to each other, and means securing the outer ends of the bars together.

"3. A bumper comprising a pair of spring bars disposed parallel with each other and having their outer ends united, said bars being bent near their outer ends, and a block interposed between the bars."

"6. A spring bumper embodying spaced resilient front and rear bars, set on edge and joined at their ends, a spacing block interposed between the bars midway between their ends, and yieldable brackets removably secured to one bar at spaced points one be-

tween each end of the bar and the block, said brackets comprising spring-bars set on edge and having their outer ends outturned to lie flat against the bar.

"7. A spring bumper embodying a pair of continuous parallel spaced spring bars connected at their ends, and means formed independent of the bars for attaching the bumper to a vehicle."

And claims 9, 14, and 18 of the Lyon patent, No. 1,198,246, which read as follows:

"9. The automobile buffer comprising horizontally yielding and substantially vertically rigid elements including transversely extending impact receiving members and open-ended lateral loops, connected attaching members to be attached to the vehicle, connecting means connecting said impact receiving members and holding them against substantial relative vertical movement and means providing for the lateral adjustment of said attaching members to adapt them for attachment to parts of vehicles located at different distances apart."

"14. The automobile buffer comprising a vertically rigid spring having a transversely extending member and a rearwardly extending attaching member adapted to be attached to a side bar of the vehicle frame, said transversely extending member being arranged adjacent another transversely extending spring member of the buffer, and means for securing together said adjacent transversely extending members."

"18. The automobile buffer comprising open-ended loops extending outwardly at the transverse ends of the buffer and an impact receiving portion forming a continuation of said loops and spacing them apart, said loops and impact receiving portion being vertically rigid but horizontally yieldable and rearwardly extending attaching means to mount said buffer on the vehicle frame and relatively adjustable to fit the supporting members of the vehicle which are at different distances apart."

The validity and scope of the Hoover patent, No. 1,191,306, has been passed upon by the courts in several cases, particularly in American Chain Co., Inc., v. Weaver, in the United States District Court, Northern District of California [1 F.(2d) 590], and in the same case by the Circuit Court of Appeals 9th Circuit [9 F.(2d) 369].

In these cases the said patent was held to be of a pioneer nature and to have created a revolutionary advance in the bumper art.

The Hoover patent, No. 1,221,800, has been adjudicated only by this court in American Chain Co., Inc., v. Bethlehem Bumper

Corp., 25 F.(2d) 759, which it must be admitted was not contested with the same vigor as the instant suit; but I do not believe that it can be truly said that it was not actually contested.

The Lyon patent, No. 1,198,246, has been before the Circuit Court of Appeals of this circuit in Lyon Non-Skid Co. v. Hartford, 250 F. 1021, Lyon v. Boh, 10 F.(2d) 30, and Hilditch and American Chain Co. v. Bethlehem Bumper Co., 25 F.(2d) 355, in which the Circuit Court of Appeals affirmed without opinion the decision of Judge Inch in the District Court [25 F.(2d) 353].

Both the Hoover patent, No. 1,191,306, and the Lyon patent, No. 1,198,246, have been before this court in a number of cases, either on motions for preliminary injunctions or at final hearing.

No prior art has been offered in the instant suits, in an attack upon the validity and scope of the patents in suit, that is not identical or substantially identical with the prior arts proofs shown before the Circuit Court of Appeals of the Ninth Circuit, or of the Second Circuit, or both of them; but still the defendants are entitled to a fair consideration of all the evidence offered, notwithstanding the fact that the patents have been previously adjudicated.

I will therefore, so far as I consider of moment, refer to the patents and publications offered in evidence as prior art.

The Abresch-Cramer truck fender, made and used in Milwaukee in 1910, was much more elaborately presented as a defense in American Chain Co. v. Weaver (D. C.) 1 F.(2d) 590, and (C. C. A.) 9 F.(2d) 369, but was held to have no bearing upon the scope or validity of the Hoover patent, No. 1,191,306, and was also urged in Lyon v. Boh (C. C. A.) 10 F.(2d) 30, in spite of which fact the Lyon patent was broadly sustained.

The Jones patent, No. 20,070, buffer for railroad cars, presents no new features over many other railway car buffer patents offered in other suits, among them being French patent to Doulait, in Hilditch-Bethlehem suit.

The Hawkins patent, No. 72,035, for improvement in elliptic carriage-springs, taught nothing in the bumper art, and presents nothing which has not been considered in prior cases and requires no further consideration.

The Wilkerson patent, No. 205,162, for improvement in sleds, discloses bobsled fenders, as does also the German patent to Seyerlen, and they were before the Circuit Courts of Appeals of the Ninth and Second Circuits, in American-Weaver and the Hilditch-Bethlehem Cases, and before this court in the American-Bethlehem suit, and certainly did not suggest the elongated loop-end spring bar or open-ended loop spring for bumpers of the patents in suit.

The Simms patent, No. 814,171, for buffer for use on motor vehicles, has been offered in evidence in other cases, particularly Lyon v. Boh, and American Chain Co. v. Weaver; but it certainly taught nothing to the patentees of either of the patents in suit and requires no extended comment.

The Welton patent, No. 955,624, for fender for automobile, has been cited before the courts as prior art in the Circuit Courts of Appeal in the Ninth and Second Circuits, in American Chain Co. v. Weaver, Lyon v. Boh, and Hilditch v. Bethlehem Bumper Co.; but it does not teach the principle underlying the inventions of the elongated loop and spring bar or open-ended loop.

The Newcomb patent, No. 969,143, for car buffer fender, and other trolley car fenders, have been offered in many suits against the Hoover and Lyon patents, but they relate to different art and could not, without being entirely reconstructed, be used as a shock absorbing automobile bumper.

The Harris patent, No. 981,260, has also been urged before the Circuit Courts of Appeal in the Second and Ninth Circuits, and may well be considered along with the patent to Welton, supra.

The patent to Weil & Stuhr, No. 1,113,524, granted October 13, 1914, on an application filed January 7, 1913, has also been before the courts in previous cases. The filing dates of the Hoover patents in suit are prior to any date assignable to the Weil & Stuhr invention, and by stipulation of counsel the effective date of the Lyon patent was prior to January 1, 1913.

The patent to Fageol, No. 1,202,690, discloses a device consisting of a rigid metal tube forming the main impact member in front of the automobile, and two spring supporting members projecting a slight distance beyond the sides of the vehicle, and preferably curved inwardly and rearwardly so as to form a goose neck, and is a compromise between the rigid bar type of bumper and the spring bar type of Hoover and improved by Lyon. This patent has been before the Circuit Courts of Appeal of the Ninth Circuit and the Second Circuit, and this court, and has been held not to anticipate Hoover or Lyon.

The patent to Sager, No. 1,208,382, was granted December 12, 1916, on application filed April 1, 1916. The filing dates of all the

patents in suit are prior to any date assignable to Sager.

The German Gebrauchsmuster, to Franke, has been before the Circuit Courts of Appeal of the Ninth Circuit and Second Circuit, and this court, many times. It does not affect the validity or scope of any of the patents in suit.

The German patent to Seyerlen has been before the Circuit Courts of Appeal in the Ninth Circuit and Second Circuit, and before this court, and what I said with reference to the American patent to Wilkerson applies with equal force to the Seyerlen bobsled patent.

The various illustrations and articles from publications, viz., The Autocar, The Horseless Age, of June 14, 1890, La Vie Automobile, Motor Traction, Die Elektromobilen Mit Reinem Batteriebetrich, Allgemeine Automobil-Zeitung, The Horseless Age, of much later date, The Motor World, New England Automobile Journal, Automobile Dealer and Repairer, Cycle and Automobile Trade Journal, and the Club Journal, do not show anything nearer as references than the patents and German Gebrauchsmuster hereinbefore referred to, and the best of these were put in evidence in the American Chain Co. v. Weaver case in the Circuit Court of Appeals in the Ninth Circuit, and in Hilditch v. Bethlehem Bumper Co., in this court.

Defendants also contend, as did the Stewart-Warner Company before Judge Thacher, in September, 1928, when a motion for a preliminary injunction was argued before him in a suit in the Southern District of New York, brought by American Chain Company, Inc., against the two Stewart-Warner Companies, that the Hoover patent, No. 1,221,-800, was invalid because of the sale by Hoover of devices covered by his patent subsequent to the filing of his original application, but two years before the filing of the divisional application on July 12, 1916, citing Westinghouse v. Jeffrey (C. C. A.) 22 F.(2d) 277, at page 279; Dwight & Lloyd v. Greenawalt (C. C. A.) 27 F.(2d) 823, at page 829; Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491; and Webster v. Splitdorf, 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792.

In each of the cases cited supra, the conclusion of the court was that in cases involving laches, equitable estoppel, or intervening private or public rights, the two-year time limit prima facie applies to divisional applications.

In the instant suit the public use by the patentee more than two years prior to the filing of the divisional application is shown, but laches, estoppel, abandonment, or intervening rights are not shown, and I agree with Judge Thacher that the divisional application in default of such a showing is not subject to the mandatory provisions of the statute (Rev. St. § 4886; 35 U. S. C. § 31 [35 USCA § 31]; Comp St. § 9430).

In American Laundry Machinery Co. v. Prosperity Co., Inc., 295 F. 819, in the Circuit Court of Appeals of this circuit, after the decision in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, Judge Hough, writing for the court, at page 821, said: "In other words, and in this case, the inventor might have made, used in public, and sold his invention on the day after he filed his application on June 7, 1916, and then, because he acquiesced in a divisional ruling in 1919, invalidated in limine whatever he requested by the 'separate' application provided for by the rule and known to the profession long before the present code of patent practice. And this is said to be the peremptory rule of the Chapman Case, supra. We feel assured that no such rule exists."

And at page 823 of 295 F. he said: "We thus find no compulsion to depart from the obviously equitable rule, certainly long settled in this circuit, and we still think in the Supreme Court also, that in the absence of laches, estoppel, or intervening rights a divisional application relates back to the original from which it was carved, and will be regarded as having the filing date and priorities of that original."

This ruling has not been questioned or qualified in any later cases in the Supreme Court or this circuit.

Defendants likewise contend that the Lyon patent, No. 1,198,246, is invalid, under Revised Statutes, § 4886, because the structure of that patent was on the commercial market for more than two years before the filing date of the divisional application, but for the reasons stated with reference to Hoover patent, No. 1,221,800, and on the authorities cited, the public use by the patentee more than two years prior to the filing of the divisional application does not subject that patent to the mandatory provisions of Revised Statutes, § 4886, whereas in the case of the said patent laches, estoppel, abandonment, or intervening rights are not shown.

The issuance of Hoover patent, No. 1,-105,974, August 4, 1914, or Hoover patent, No. 1,212,059, of January 9, 1917, does not affect the validity of the Hoover patents in suit No. 1,191,306 and No. 1,221,800.

Both of the Hoover patents, Nos. 1,105,-

974 and 1,212,059, are extremely limited in terms and confined to specific details of a certain form of bumper and were copending with the application for the broad invention; therefore Hoover patents, Nos. 1,191,306 and 1,221,800, are not invalidated by them. Thomson-Houston Electric Co. v. Elmira (C. C. A.) 71 F. 396.

▪ What I have said with reference to the Hoover patents likewise applies to Lyon patent, No. 1,140,909, as this patent was granted upon a divisional application filed March 28, 1914, from the original application filed April 21, 1913, which was the basis of the Lyon patent in suit, No. 1,198,246. The inventions of the two patents are separate and distinct. The claims of No. 1,140,909 are specific to the particular attaching members, the claims of No. 1,198,246 are generic, and the applications were copending; therefore the issuance of Lyon patent, No. 1,140,909, on May 25, 1915, does not affect the validity of Lyon patent, No. 1,198,246.

▪ The patents in suit are valid.

The so-called rigid bar bumper was universally used in the automobile art prior to the elongated loop-end spring bar bumpers, of which Hoover and Lyon are examples.

The function of the rigid bar bumper was to knock aside obstacles in the way of the car, but when it came into collision with an immovable object, the car was brought to a practically instantaneous stop with a tremendous shock, communicated directly to the frame of the car, with disastrous results to the car.

The function of the elongated loop-end spring bar bumpers was to yield gradually and resistingly in all its members upon collision with an obstacle, to absorb the shock of impact, so as to bring the car to a stop over an appreciable period of time, and to allow comparatively little of the same to be communicated to the frame of the car.

Pleasure cars to-day practically in their entirety are equipped with the elongated loop-end spring bar bumpers of various makes, heavy trucks only being equipped with the rigid bar type.

Bumpers of the elongated loop and spring bar open-ended loop types will protect the car from damage when coming into contact with a stationary object, while the car is operated at a speed of from 10 to 15 miles an hour, although the bumper will be destroyed, and the same bumpers will protect the car from damage from the ordinary contacts incident to travel in congested traffic in large cities, but in such cases in most instances without permanent injury to the bumper as well as the car.

Hoover was the first to conceive and successfully introduce into the bumper art the idea of the absorption of the impact of collision by the resistant yielding of elongated loop-end spring bar bumpers.

To successfully function the ends of such bumpers should be relatively yielding, and the center of the impact members should be relatively stiffer.

The elongation of the loop is important, as the yielding of the loop-ends increases as the cube of the length of the loop.

The evidence shows, as it has been held, that the Hoover invention was of a pioneer nature.

The three structures of the defendants, of which complaint is made, are all provided with pivotal connections between the ends of the front and rear members at the extreme end of the loops, and all have integral continuous impact members extending from one end of the bumper to the other.

In two of the structures there is employed a short curved piece pivotally connected at the outer end to the front bar, and at the inner end secured to the front bars at about 1½ to 2 feet from the end.

In one of the structures there is employed a rear bar that extends across the back of the bumper, the central part of the rear bar being arched forward to contact with and reinforce the center of the impact member.

All of the bumpers are provided with separate spring arms of flat strip resilient steel, adapted to be adjustably connected to the rear members of the bumpers so as to fit cars having varying frame widths.

In all of the said bumpers of the defendants is found a central portion of the impact member relatively stiffened or reinforced, and all have elongated loops at each end which are relatively resilient and yielding and designed to absorb the shock of an impact delivered at any angle and at any part of the bumper, and all its parts co-operate in the absorption of the shock of such impact at whatever point it may be delivered upon the bumper.

▪ We now come to the question of the infringement by the defendants of Hoover patent No. 1,191,306, of which claims 1, 3, and 6 are in suit.

Two forms of the Hoover invention, both involving the elongated loop-end spring bar feature, are shown.

Figures 2 and 4 show what is known as the single bar bumpers and figures 1 and 3

show what is known as the front and rear bar bumpers.

The general features of both forms are the same, as are also the results in the way of shock absorption by gradually bringing the car to a stop because of the resilient but resistant action of the all spring portions of the bumper.

Claims 1, 3, and 6 are generic.

Claim 3, which is typical of the others, reads as follows: "3. A bumper for vehicles comprising a continuous spring buffer bar for extension transversely of the vehicle, said bar having integral spring-supporting members, the said supporting members constituting a continuation of the body member and being extended laterally therefrom, and then rearwardly."

The element described as "continuous spring buffer bar" is an impact bar so constructed as to have continuous spring action from one end of the impact bar to the other, and "integral spring supporting members constituting continuation of the body members, and being extended laterally therefrom," are end portions of the Hoover bumper bar not made in separate parts and fastened together but integral; the word so used referring to the connection between the end portions of the impact bar and the center or body portions.

The meaning of the terms last above defined is apparent when consideration is given to the fact that they were introduced into the said Hoover patent by amendment to distinguish from the Fageol device in which the impact bar the central or body portion was rigid and the spring ends extending therefrom were separate and connected to the body portion.

In view of this interpretation of the terms of claim 3, we find that it reads on the structures of the defendants, in that they have a continuous spring buffer bar or impact member extending transversely of the vehicle, and said bar has integral spring supporting members constituting a continuation of the body member extended laterally therefrom and then rearwardly.

The center portion or body member of the buffer bar is of spring quality, and the spring supporting members that extend laterally from the center or body member are integral with the body member.

The spring supporting members, after extending to the outer ends of the bumper, are then carried rearwardly for attachment by means of brackets to the frame members of the car.

The defendant's structures are also provided with means of connecting the bumper structure with the side members of the frame of the car, and the rear member of the bumper is connected to the end of the front or impact member, so as to form an elongated loop or bend at the end of the bumper.

Claim 2 is specific to the one-piece structure shown in figures 2 and 4 of the Hoover patent.

Claims 4 and 5 are specific to the feature illustrated in the Hoover drawings of the closed eye formed at the ends of the loops with strengthening pins inserted in these eyes.

It therefore seems to me that claims 1, 3, and 6 are generic to the underlying invention present in both modifications, and that neither of those claims is restricted to any particular contour of the extreme ends of the elongated loop.

In American Chain Co. v. Weaver, supra, the Circuit Court of Appeals of the Ninth Circuit restricted the claims of the Hoover patent in suit No. 1,191,306 to a bumper having a continuous impact bar from one side of the bumper to the other, and held that the Lyon bumper which had an impact member made of two separate overlapping parts was not covered by these claims, but did not limit those claims to a structure having closed eyes at the ends of the loops.

The limitation actually imposed was to the effect that the word "continuous" was not intended to qualify "spring action," but was intended to qualify the words "buffer bar," and what was said regarding reading into the claims the statements of the specifications seems to me to have been by way of argument and not as limiting the claims with respect to the contour of the ends of the loop.

To construe the claims in suit as limited to a bumper having eyes at the ends of the loop would limit a patent which the court held was of a pioneer nature to a feature to which claims 4 and 5 were specifically drawn. Such a restricted construction does not seem to be in harmony with the liberal treatment to which such a patent is entitled; on the contrary, the claims in suit should be construed as broad enough to cover other contours of the loop.

However, even if the claims of the said patent in suit be limited to the use of closed eyes and pins extending vertically through the same at the ends of the loops, it does not seem to me that defendants' structures would escape from the charge of infringement.

The defendants' structures contain an elongated loop-end structure, the use of

which generally was taught by Hoover, and operate in the same manner to give the same results made possible by his invention.

The use of the so-called parallel or multiple bars in the defendants' structures does not relieve from infringement, as it does not change the general construction or mode of operation of the device.

The defendants' structures of which complaint is made in this suit infringe claims 1, 3, and 6 of the Hoover patent, No. 1,191,306.

Consideration will now be given to the question of the alleged infringement of Hoover patent, No. 1,221,800, of which claims 2, 3, 6, and 7 are in suit.

This patent covers the front and rear bar modification of the original Hoover elongated loop and spring bar bumper.

The rear bar not only affords a desirable reinforcement of the middle portion of the impact member by the connection of the rear bar with the impact member at or near its center, by means of a block or other suitable means, but it also forms a base for the adjustable connection thereto of separate spring arms or brackets attaching the bumper to the frame of the car; and these spring arms or brackets being adjustable on the rear bar, the device can fit cars having different frame widths.

Defendants contend that the claims now in suit must be limited to integral and connections to the front and rear bars, and that if construed broadly enough to include a front and rear bar bumper, composed of separate front and rear bars, connected at their ends, the patent would be invalid on the ground that there was no disclosure of any such construction in the original application, and therefore Hoover would be entitled only to the filing date of the divisional application, July 12, 1916, and the patent in suit No. 1,221,800 would be anticipated by the Weil & Stuhr patent, No. 1,113,524, granted October 13, 1914, Sager patent, No. 1,208,382, application filed April 1, 1916, granted December 12, 1916, and Hoover patent, No. 1,212,059, application filed November 3, 1915, and because of the sale by Hoover of structures embodying the invention of such claims more than two years prior to such date.

This contention of the defendants cannot be sustained.

The last portion of the contention, relating to a sale more than two years prior to the date of the divisional application of a structure embodying the invention of such claims, has already been fully considered and requires no further argument; but it may

be said in passing that, even if the contention in that respect had any weight, it would fall because the evidence on which the defendants must rely shows only the sale, prior to July, 1914, of bumpers illustrated in Hoover patents, Nos. 1,221,800 and 1,105,-974, both of which illustrations show the front and rear bars integrally connected at their end.

The main portion of the contention is erroneous, in that it entirely disregards the distinction between generic and specific claims, and by the mere fact that Hoover in his original application, filed January 24, 1912, showed only one contour of the ends of the loops of the two modifications of the bumper illustrated in that application, he was not limited by law to that specific form of end connection.

The invention being of a pioneer nature, Hoover was not limited to specific claims covering the integral connections of the front and rear bars, but was entitled also to generic claims broad enough in their terms to cover any connection integral or otherwise.

The history of the original and divisional applications in their passage through the Patent Office clearly shows that Hoover sought and finally obtained claims that dominated both the single bar and front and rear bar forms of his invention, and at no time abandoned his claim to such control.

Defendants' front bumper has front and rear spring bar members, the rear bar extends across the back of the bumper in a direction substantially parallel with the impact member, and is arched forward in the center to reinforce the center of the impact member, and is provided with attaching brackets of spring steel, adjustable on the rear bar so as to permit the bumper to be applied to cars having different frame widths.

Claim 1, taken for example, is one of the claims of the patent which calls for front and rear bars integrally attached at their ends.

No such limitation is found in claims 2, 3, 6, and 7; which expressly refer to a "pair of spring bars" and "means securing the outer ends of the bars together."

The uniting of separate front and rear bars at their outer ends by pins as used in defendants' structure is clearly included in such claims.

The use of "means formed independent of the bars for attaching the bumper to a vehicle" is emphasized in claim 7, as well as in other claims.

The means so referred to are the spring attaching arms or brackets which are adjustable and permit of the bumper being applied to cars of different frame widths.

That in the defendants' rear bumpers the rear bar is not continuous, but cut in the middle, and the inner ends bent forward to contact with and reinforce the impact member near the center, does not relieve from infringement for example claim 2.

The rear bars perform the reinforcing function of the said patent in suit and extend substantially parallel with the front member and afford the base for the adjustable separate supporting arms or brackets that render the bumper adaptable to cars of different frame widths.

The contention of the defendants that the word "parallel," as used in claims 2, 3, and 7 of the said patent in suit, as indicating the direction of the rear bar with respect to the front bar, so limits the claims as to relieve their structure from infringement because of the arch in the center of the rear bar, is too limited and technical because the said Hoover patent in suit shows that the front and rear bars are not in mathematical parallelism. To attain the desired object, all that is necessary is that portions of the rear bar shall be substantially parallel with the impact member, so that such portions may afford bases for the adjustment thereon of the separate arms or brackets, so as to permit the bumper as a whole to be adapted to cars of different frame widths.

The laboratory tests testified to on behalf of the defendants were made under conditions too dissimilar from ordinary use of an automobile to be of any particular value, and defendants cannot on their showing escape infringement.

The defendants have utilized substantially the same structure to obtain the same result, and the claims of the said patent are infringed by the use of rear bars substantially parallel to the front bar.

The plate or clip connects the center of the defendants' rear bar with the center of the impact member, and this meets the requirement of the claims calling for a block connecting the center of the rear bar with the center of the impact member.

The short arch formed at the center of defendants' rear bar performs the same function as the block referred to and is a mechanical equivalent thereof.

The defendants infringe claims 2, 3, 6, and 7 of the Hoover patent in suit No. 1,221,800.

This leaves for consideration only the alleged infringement of the Lyon patent, No. 1,198,246, claims 9, 14, and 18.

The question of infringement by the defendants' bumper of the said patent in suit is dependent upon whether it has the "open-ended loops" which constitute the improvement of the Lyon patent over the disclosure of the Hoover patent. Lyon v. Boh (C. C. A.) 10 F.(2d) 30, Hilditch and American Chain Co. v. Bethlehem Bumper Co. (D. C.) 25 F.(2d) 353, affirmed without opinion (C. C. A.) 25 F.(2d) 355.

It does not seem to me to be inconsistent to find that a structure may employ the underlying Hoover invention of the elongated loop and spring bar member and at the same time utilize the open-ended loop of Lyon.

The loops in the defendants' structure are relatively broad from front to rear extending to the ends of the loops, and all parts of the front and rear members in the defendants' bumpers take part in the spring action of the bumper; under impact the parts wrapped around the vertical pin when subjected to force tend to unwind that bend, and because of the strong quality of the material, there is a recognizable spring action there, and when the impact has been removed in tending to wind it up again.

I can find no substantial difference resulting from locating the pivot connection between the ends of the impact and rear bars, at the extreme end of the bumper, or locating the pivot connection three or four inches from the extreme end of the bumper. Hilditch and American Chain Co. v. Bethlehem Co. (D. C.) 25 F.(2d) 353, affirmed (C. C. A.) 25 F.(2d) 355.

The defendants infringe claims 9, 14, and 18 of the Lyon patent, No. 1,198,246, in suit.

A decree may be entered in favor of the plaintiff for an injunction and damages, with costs and the usual order of reference.