## H. W. ROOS CO. v. McMILLAN.
### No. 6166.

Circuit Court of Appeals, Sixth Circuit.
April 11, 1933.

Harold E. Stonebraker, of Rochester, N. Y. (J. Sagmeister, of Cincinnati, Ohio, on the brief), for appellant.

C. C. Reif, of Minneapolis, Minn. (Reif & Braddock, of Minneapolis, Minn., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The patent in suit is reissue patent No. 16,736, granted to McMillan. The original patent was granted May 26, 1925, and the application for the reissue was filed November 6, 1926, and granted September 13, 1927. Suit for infringement was filed by the patentee, doing business as M. & M. Wire Clamp Company, against the H. W. Roos Company, exclusive licensee under the Keffer patent, No. 1,590,033, issued June 22, 1926, on an application filed September 10, 1925. The defense was invalidity because of laches and intervening rights. Other defenses were also made, all of which were denied. We find it necessary to consider only the laches and intervening rights.

Both the original and the reissue patents relate to a clamp for concrete column forms consisting of pairs of bars pivotly connected at one end with longitudinally spaced slots extending through the bars, a slotted yoke or member attached to one of the bars and embracing both, and a wedge adapted to insert

through the slots of the bars and yoke to effect a continuous take-up. The claims of the original patent were limited to slotted bars overlapping at the sides of the column form with wedges for moving them longitudinally between the corners, while the reissue claims call for any form of take-up by means of the use of wedges in slots and cover structures which would be free under the original claims, such as the structure of the defendant.

Prior to May 26, 1925, Keffer caused a single clamp to be made in Kansas City in conformity with the specifications and claims of his patent application. In June, 1926, he had five other clamps made, which he induced some contractors, his friends, to "try out" in Chicago. The use of these clamps was experimental, certainly not commercial. On November 26, 1926, appellant secured an option from Keffer for three months to take out an exclusive license under his patent. This option was later extended for another month. On March 23, 1927, appellant entered into the exclusive license contract. One witness said that appellant had 400 clamps in use in the early part of 1927. Keffer never manufactured or sold any of his clamps, and appellant did not acquire any right or interest in the patent or expend any money to develop it prior to November 6, 1926. Subsequently and perhaps before the making of the license contract, it did expend a considerable sum of money in equipping itself to manufacture and sell the device. This expenditure, however, was made after the filing of the application for the reissue.

██ Doubt has been expressed as to whether a reissue patent may be held valid at large but invalid as to one who has acquired intervening rights. Cf. Otis Elevator Co. v. Atlantic Elevator Co. (C. C. A.) 47 F.(2d) 545, 549, 550. The question, as such, was not decided in Ashland Fire Brick Co. v. General Refractories Co., 27 F.(2d) 744 (6 C. C. A.). It has also been thought that a private intervening right is but an aspect of laches in its full sense. Compare the two cases referred to. We pass upon the claim to such rights here, however, as argued; that is, as relating to the validity of the patent as against the defendant's device apart from the effect of laches in general. Upon this feature of the case it contended that the period in which private rights may attach extends from the date of the original issue to the date of the grant of the reissue rather than the date of the application for the reissue. We think the authorities do not sustain that position, but limit the interim to the date of the application for the reissue. Walker on Patents (6th Ed.) § 299; Odell v. Stout (C. C.) 22 F. 159, 163; Ashland Fire Brick Co. v. General Refractories Co., supra; Naivette, Inc., v. Bishinger, 61 F.(2d) 433 (6 C. C. A.); Topliff v. Topliff, 145 U. S. 156, 169, 12 S. Ct. 825, 36 L. Ed. 658. As thus limited, it is obvious that the defense of estoppel, because of vested private rights, is not available, for prior to that date the appellant had neither entered into the license agreement with Keffer nor made any expenditure on the faith of the abandonment of disclosures in the original McMillan patent. Neither, as we have seen, had Keffer acquired any intervening rights.

██ The statute under which a patentee may claim a right to reissue provides: "Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee." 35 USCA § 64. This statute does not specifically authorize broadened reissues, but the courts have read into it the right to such reissues where justified by equitable principle. Keller v. Adams-Campbell Co., 264 U. S. 314, 317, 44 S. Ct. 356, 68 L. Ed. 705. The right, however, can only be had where an "actual mistake" has occurred, "not from a mere error of judgment, * * * but a real bona fide mistake, inadvertently committed; such as a Court of Chancery, in cases within its ordinary jurisdiction, would correct." Miller v. Bridgeport Brass Co., 104 U. S. 350, 355, 26 L. Ed. 783. In James v. Campbell, 104 U. S. 356, 371, 26 L. Ed. 786, it was said: "Of course, if, by actual inadvertence, accident, or mistake, innocently committed, the claim does not fully assert or define the patentee's right in the invention specified in the patent, a speedy application for its correction, before adverse rights have accrued, may be granted, as we have explained in the recent case of Miller v. Brass Company, supra, page 350 [of 104 U. S., 26 L. Ed. 783]. But where it is apparent on the face of the patent, or by contemporary records, that no such inadvertence, accident, or mistake, as claimed in a reissue of it, could have occurred, an expansion of the claim cannot be allowed or

sustained." In Mahn v. Harwood, 112 U. S. 354, 359, 360, 5 S. Ct. 174, 177, 6 S. Ct. 451, 28 L. Ed. 665, it was said: "A patent for an invention cannot lawfully be reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake inadvertently committed in the wording of the claim." See, also, Coon v. Wilson, 113 U. S. 268, 277, 5 S. Ct. 537, 28 L. Ed. 963.

It is of course true that a court will not review the decision of the Commissioner as to error arising by inadvertence or mistake unless the matter is manifest on the record. Topliff v. Topliff, supra. We think it may be noted, though, as bearing upon delay in applying for the reissue here in suit, that the error, if there was error, could have been discovered as soon as the patent was examined, and that, as said in Miller v. Bridgeport Brass Co., the only mistake claimed is "that the claim was not as broad as it might have been." We note also that there was no showing that the narrowness of the claims arose from mistake in framing them (American Automotoneer Co. v. Porter, 232 F. 456 [6 C. C. A.]), or that either the patentee or his solicitor "without intending to do so, drafted or accepted claims not commensurate with the invention" (Van Kannel Revolving Door Co. v. Winton Hotel Co., 276 F. 234, 238 [6 C. C. A.]).

No fixed rule can be laid down as to what constitutes an unreasonable delay. It has been said that, where the reissue is for the purpose of enlarging claims, the only mistake suggested being that they are not broad enough, the application should be made within "a reasonably short period after the original patent was granted." What is a reasonably short period or a reasonable time depends to some extent, at least, upon the curative purposes of the application. We do not understand from the authorities nor from the discussions in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, and Webster Electric Co. v. Splitdorf Electric Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792, that an application for a reissue with broadened claims is in time if filed at any time within two years from the date of the original patent in the absence of a specific showing of the intervention of private rights. It is true that by analogy to the law of public use a longer delay requires that excuse therefor should be made manifest by special circumstances. Topliff v. Topliff, supra. This putting of the burden on the patentee to show that the delay was not unreasonable is not to be taken, we think, as mean-

ing that there can be no unreasonable delay or laches within that period. No decision of the Supreme Court to which we have been referred so adjudicates. In the cases in which validity has been denied, the question has not been free from intervening private rights, and necessarily so, because it is only when some private right is involved that the reissue is questioned in the courts. It has been stated too often, however, to admit of doubt that the patentee is bound to discover the error within a reasonable time and apply for reissue or lose his right. These statements are made without reference to circumscribed periods. In the case of a broadened reissue, there is involved, it seems to us, not only the right of the public, that is, the right to use that which is originally disclosed and not claimed and which the public presumably does use, but also the right of the patentee to broaden his claims, a right that may be lost by unreasonable delay depending upon the applicable circumstances and without reference to fixed periods. In this view of the patentee's rights, we are content to hold, until the Supreme Court has held otherwise, that a reissue patent may be held to be invalid because of unreasonable delay in filing the application therefor, notwithstanding the absence of a showing of intervening private rights and even though the application were filed within two years from the date of the original issue.

Applying the rule as stated above to the facts of this case, we are forced to conclude that there was an unreasonable delay in the filing of the application for the reissue here in suit. The patentee gave the following testimony: "I asked my attorney about the claims of the original patent at least six months previous to November 6, 1926. I am quite sure of that. I fix that date in my mind as six months prior to the filing of that application for reissue because there was an important circumstance came up that warranted the investigation. I saw another clamp. It wasn't the Keffer clamp. It was the Symons clamp. It was the early part of 1926, on a job." The following day the witness stated, it is true, that he did not see the new styled Symons clamp prior to the time he filed his application, his attention meanwhile having been called to the fact that that clamp was not put on the market until 1928. He admitted, however, that he had seen a Keffer clamp on a job in Chicago and that it might have been in the spring of 1926. The proofs show that Keffer clamps were in experimental use in Chicago at that time. Even if the patentee did not see one of them,

he saw some clamp in the spring of 1926 which suggested to him a possible deficiency in the claims of his patent; and yet not for six months thereafter did he file an application for a reissue. Presumably it was then filed because of the clamp which he had seen and which suggested the inquiry as to his own patent claims. Reasonable care, it seems to us, would have required him, upon noticing this clamp in Chicago, to proceed immediately to correct the error in his patent. It was said in Miller v. Bridgeport Brass Co., that "it will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretence of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms." In our opinion there are two reasons why the reissue patent cannot be sustained. The first is the failure of the patentee to file an application therefor prior to the date of his discovery of the use of a similar device in Chicago. An inspection by the patentee of his patent at any time after it issued and prior to his noticing the Chicago clamp would have disclosed the mistake which he claims was made, and, whether he did not inspect it and thus did not discover the mistake or did inspect it and failed to file his application, he was guilty of negligence effecting an unreasonable delay. The second is the failure to file an application for six months after he had seen the clamp which suggested a possible defect in his claims. This was sufficient to bar a reissue if it was not already barred by failure to discover the error, if there was error, and correct it in the preceding twelve months.

The decree is reversed, and the cause remanded, with directions to dismiss the bill.