PROST, Circuit Judge,
dissenting.
I respectfully dissent. In my view, the majority opinion seriously errs in reversing the district court’s findings and conclusions that U.S. Patent No. 5,260,291 (“'291 patent”) is unenforceable on the grounds of both prosecution laches and inequitable conduct. In doing so, the majority propounds a new and unsupportable legal standard for prosecution laches. With regard to inequitable conduct, the majority not only creates a new evidentiary standard, but it also ignores virtually unassailable credibility findings made by the district court after a four-day bench trial. I address each in turn below.
I. Prosecution Laches
The majority appears to not take issue with the district court’s findings and conclusion that the patentee’s almost decade- *735 long delay in prosecuting its application— caused by filing eleven continuation applications, abandoning ten of those applications, and obtaining nearly two years’ worth of time extensions merely to file continuation applications rather than responses to the Office Actions — was unreasonable. Despite Cancer Research Technology Limited and Schering Corporation’s (collectively, “Cancer Research”) excuses justifying the delay, the information eventually used to overcome the examiner’s initial rejection was contained in the application as originally filed ten years earlier. The district court carefully rejected all of the patentee’s excuses for its delay, ultimately concluding that the applicants did not prosecute the application until it became commercially advantageous to do so.
Instead, the majority rejects the legal standard the district court applied. The district court concluded that under Symbol Technologies, Inc. v. Lemelson Medical, 422 F.3d 1378 (Fed.Cir.2005) (“Symbol Techs. II”), prosecution laches does not require a showing of intervening rights, but rather turns on whether under the totality of the circumstances Cancer Research’s delay was unreasonable and unexplained. See Cancer Research Tech. v. Barr Labs., Inc., 679 F.Supp.2d 560, 572-73 (D.Del.2010). Besides rejecting this standard, the majority says that in order to establish prosecution laches (1) prejudice to the alleged infringer must be shown, and (2) that prejudice requires that “either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay.” Maj. Op. at 729 (emphasis added); see also id. at 732 (“Barr has failed to establish either that it or that others developed or invested in temozolomide or any other claimed tetrazine compound between 1982 and 1991, the period of delay. Accordingly, Barr cannot establish prosecution laches as a matter of law....”).
First, I think the district court got it right because I do not agree with the majority that a showing of intervening rights, i.e. prejudice, is compelled by our precedent. Moreover, even if one could construe the case law as requiring prejudice, there is no basis, in the relevant case law or otherwise, for the majority’s further temporal limitation that the prejudice exists during the period of delay.
Shifting the inquiry regarding prosecution laches from Cancer Research’s own conduct to the conduct of the party invoking the defense ignores that prosecution laches is an equitable defense. Neither the Supreme Court nor this court has required a defendant to establish prejudice to assert prosecution laches. Indeed, in Woodbridge v. United States, the Court held that a plaintiffs willful or negligent postponement in obtaining patent rights alone can result in forfeiture. 263 U.S. 50, 57, 44 S.Ct. 45, 68 L.Ed. 159 (1923) (quoting Kendall v. Winsor, 62 U.S. (21 How.) 322, 329, 16 L.Ed. 165 (1858), for the proposition that an inventor “ ‘may forfeit his rights as an inventor by a willful or negligent postponement of his claims, or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others’ ” (emphasis added)).[1] Our precedent is no *736 more restrictive. Recognizing that prosecution laches is an equitable doctrine, we have declined to “set forth any firm guidelines for determining when such laches exists.” Symbol Techs. II, 422 F.3d at 1385. Laches may be triggered, by “the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims.” Id. at 1386. And we have specifically indicated that “repetitive refilings that demonstrate a pattern of unjustifiably delayed prosecution” “for the business purpose of delaying ... issuance [of the patent]”' — -an apt description of Cancer Research’s behavior during the prosecution of the '291 patent — supports a finding of laches. Id. at 1385-86.
More importantly, even if prejudice is required, there is no basis for the majority’s new requirement that one must confine himself to the period of prosecution delay in determining whether prejudice exists. Such a requirement (1) discounts the relationship between prosecution laches and broad public interests in the timely issuance of patents and (2) imposes a novel time restriction on the harm suffered.
By requiring this particularized prejudice, the majority sidesteps the real harm at issue in this case. The Supreme Court has explicitly recognized that delaying a patentee’s monopoly period harms the public by delaying its free use of the patented invention. Woodbridge, 263 U.S. at 58-59, 44 S.Ct. 45. Here, the applicant first filed the patent application disclosing temozolomide in 1982. By stalling prosecution for its own business purposes for nearly a decade, Cancer Research obtained a patent which does not expire until 2014— almost thirty-two years after the first application in this chain was filed. The majority downplays the public prejudice caused by this delay,[2] Maj. Op. at 731-32; however, Cancer Research’s conduct has prejudiced the public by extending its patent monopoly over temozolomide. Indeed, Congress has specifically recognized the public’s interest in obtaining affordable prescription drugs by enacting a regulatory scheme to expedite the availability of generic drugs. See Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 1984 Stat. 1538 (codified as amended in scattered sections of 21 & 35 U.S.C.). Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc. (collectively, “Barr”), as well as other makers of generic pharmaceuticals, are likewise *737 harmed. It is unable to enter the market without risking a patent infringement suit until a date far later than the one it would have faced had Cancer Research not engaged in its excessive delays.
The majority avoids entirely these harms by confining the relevant harm to the period during which Cancer Research delayed prosecution of its patent application. There is no basis for the majority’s limitations. I would hold that the more generalized harm associated with the improper extension of the patent monopoly, including the accompanying market uncertainty and denial to the public of free use of the invention, is sufficient prejudice to justify the use of an equitable defense. Even if our precedent required adverse intervening rights, it is not appropriate to confine the inquiry to the period of time when Cancer Research was actively delaying prosecution. The harm continued though the patent term “extension” Cancer Research improperly created though its delay tactics.
II. Inequitable Conduct
Similarly, in reversing the district court’s findings and conclusions regarding inequitable conduct, the majority veers from our precedent in at least two respects: (1) it creates a new evidentiary standard for establishing inequitable conduct, and (2) it inexplicably rejects the district court’s unassailable credibility determinations, which served as the basis for its conclusion that inequitable conduct occurred.
Again, in my view, the district court got it exactly right. Here, an inventor, Dr. Stevens, withheld important data from the U.S. Patent and Trademark Office (“PTO”) that contradicted the disclosure in the patent applications. The majority does not take issue with the district court’s conclusion that this data was highly material. Clearly, it could not, because at a minimum the disclosure would have affected the scope of the patent granted. Rather, it rejects the district court’s credibility determination that Dr. Stevens’s explanation for not submitting this highly material data was belied by the facts that Stevens found the data conclusive enough (and sufficiently nonconfidential) to publish the data and his conclusions of inactivity or toxicity to the scientific community. Stevens did not qualify his statements regarding inactivity. Certainly, if Stevens found the information sufficiently accurate to base conclusions upon and to publish to his peers, it was sufficiently accurate and conclusive enough to submit to the PTO. Cancer Research, 679 F.Supp.2d at 581.
The majority’s rejection of the findings and conclusions of the trial judge rests on two faulty pillars. The majority first missteps by determining that materiality and intent require separate evidentiary bases. The majority concludes that the district court erred because it “did not rely on any other evidence to support its finding of deceptive intent beyond that used to find the withheld data material.” Maj. Op. at 733. Requiring separate evidence for each prong, however, has no basis in our precedent. The majority is correct that the district court cited to the same evidence in support of its findings of intent and materiality. But it by no means rested on its finding of materiality to infer intent. Rather, the evidence presented at trial separately supports the district court’s findings on both prongs, and when combined with the district court’s credibility findings regarding Dr. Stevens’s “explanation” for his failure to disclose, is absolutely sufficient to support the conclusion that highly material evidence was withheld from the PTO with intent to deceive.
Further, the majority’s treatment of the district court’s credibility determinations— *738 which are virtually unreviewable by this court — is baffling. See LNP Eng’g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1361 (Fed.Cir.2001). The majority concludes that the district court did not draw the most reasonable inference regarding Stevens’s withholding of the published data. Maj. Op. at 733-34. Instead, the majority believes that there is another “an equally reasonable inference” — Stevens did not appreciate the potential importance of the data to the patentability of the claims. We should not draw inferences that the district court has already excluded based on its own credibility findings with respect to Stevens’s explanations for the withholding.
In sum, in light of our prosecution laches precedent, I would not require that Barr have intervening rights during the period that Cancer Research delayed prosecution of its patent. Even if I did, I would not limit the prejudice inquiry to the period of delay. Further, given our deferential standard of review, I cannot agree that the district court’s intent finding with regard to inequitable conduct is clearly erroneous. Accordingly, I would uphold the district court’s application of prosecution laches and its finding of inequitable conduct.

. The majority also cites to Webster Electric Co. v. Splitdorf Electical Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792 (1924), Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265 (1938), and General Talking Pictures Corp. v. Western Electric Co., 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938). None of these Supreme Court cases require a showing of prejudice where an applicant unreasonably extends prosecution by refusing to respond to the merits of nine substantially similar Office Actions. Un *736 der Webster, “laches, equitable estoppel or intervening private or public rights” can each alone bar the right to a claim presented in a subsequent divisional patent. 264 U.S. at 471, 44 S.Ct. 342 (emphasis added). The Webster Court suggested that there is a presumption that such claims are unreasonable (and thus time-barred) where the applicant waited more than two years to present the claims in a divisional application. Id. Under Webster, applicants could only obtain such claims if they provided justification for the more than two-year delay. Id. In Crown Cork, the Court clarified that "in the absence of intervening rights, the decision in [Webster] does not mean that an excuse must be shown for a lapse of more than two years in presenting the divisional.” 304 U.S. at 167-68, 58 S.Ct. 842; see also General Talking Pictures, 304 U.S. at 184, 58 S.Ct. 849. Crown Cork and General Talking Pictures make clear that a two-year delay in filing a divisional is not per se unreasonable in the absence of intervening rights. However, nothing in these cases requires a party to show that it had intervening rights or suffered any other prejudice as a prerequisite to asserting the equitable defense of prosecution laches where the patentee’s prosecution delays are unreasonable under the totality of the circumstances.

. While the majority suggests Cancer Research itself "incurred a cost” due to the prosecution delay, that Cancer Research's delay resulted in its not getting the full patent term extension has absolutely no relevance to whether public or private interests were prejudiced by the delay.