**DIGITAL CONTROL INCORPO-RATED, a Washington corporation, Plaintiff,**

v.

**McLAUGHLIN MANUFACTURING CO., INC., a Delaware corporation, Defendant.**

**No. C01–985P.**

United States District Court, W.D. Washington at Seattle.

Sept. 18, 2002.

Paul T Meiklejohn, Brian Chung Park, Dorsey & Whitney LLP, Seattle, Aaron Keyt, Digital Control Inc, Renton, for Digital Control Inc, a Washington corporation, plaintiff.

Stuart R. Dunwoody, Bruce A. Kaser, Davis Wright Tremaine LLP, Seattle, Steven E Farrar, Leatherwood Walker Todd & Mann, Greenville, SC, for McLaughlin Manufacturing Co Inc, a Delaware corporation, defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROSECUTION LACHES

PECHMAN, District Judge.

Defendant McLaughlin Manufacturing Co. ("McLaughlin") moves for partial summary judgment that United States Patent Nos. 5,337,002 ('002 patent); 5,633,589 ('589 patent); 5,767,678 ('678 patent); 5,926,025 ('025 patent); 6,002,258 ('258 patent); 6,057,687 ('687 patent); 6,008,651 ('651 patent); and 6,232,780 ('780 patent) are unenforceable against McLaughlin because of prosecution laches. (Dkt. No. 78.) Plaintiff Digital Control Incorporated

("DCI") argues that the doctrine of laches does not apply to this matter and moves for a Fed.R.Civ.P. 56(f) continuance and attorneys fees. Because Defendant has failed to show that there is no genuine issue of material fact regarding whether Plaintiff's delay in prosecuting patents was unreasonable and unexplained, Defendant's motion for partial summary judgment is DENIED. Plaintiff's motion for a continuance is MOOT. Because the law of prosecution laches is unsettled, Plaintiff's motion for attorneys fees is DENIED.

## BACKGROUND

This matter involves patents of a device that drills holes for cable, water, and other utility lines underground, without requiring the opening of deep, above-ground trenches. This technology, which allows construction workers to avoid digging up streets and sidewalks, is known as horizontal directional drilling (HDD), or trenchless locating. Defendant argues that the Court should find eight of the twelve patents at issue unenforceable because of prosecution laches—Plaintiff's unreasonable delay in prosecuting them in the Patent and Trademark Office ("PTO").

The patents that Defendant argues are unenforceable come from the '442 patent family. The '442 patent was filed on March 1, 1991, and issued by the PTO on October 13, 1992. It expires on March 1, 2011. Over the course of approximately eight years, Plaintiff obtained a number of other patents as continuations or continuations-in-part of the '442 family. Defendant argues the following eight patents are unenforceable.

| Patent No. | Filed | Issued | Expires |
|---|---|---|---|
| '002 | 10/09/1992 | 08/09/1994 | 08/09/2011 |
| '589 | 05/16/1995 | 06/27/1997 | 08/09/2011 |
| '678 | 10/09/1996 | 06/16/1998 | 03/01/2011 |
| '025 | 04/13/1998 | 07/20/1999 | 03/01/2011 |
| '258 | 04/13/1998 | 12/14/1999 | 03/01/2011 |
| '687 | 04/13/1998 | 05/02/2000 | 03/01/2011 |
| '651 | 09/18/1998 | 12/18/1999 | 03/01/2011 |
| '780 | 03/03/2000 | 05/15/2001 | 03/01/2011 |

Defendant contends that development of the '442 patent family over eight years is unreasonable delay, and infringement claims on these patents are barred by prosecution laches.

When Plaintiff originally filed the '442 patent application in 1991, the PTO determined that the '442 application contained four different independent groups of inventions relating to HDD technology: a signal receiver, transmitter housing; capacitive pitch sensor, and calibration method. The PTO allowed DCI to pursue only one of these invention groups in a single patent, and DCI chose the pitch sensor. While the '442 patent describes the entire HDD process and device, it states claims relating only to the pitch sensor.

Plaintiff DCI chose to patent the remaining three inventions as continuations, the latest of which was issued in 2001. The parties do not dispute that continuation practice is lawful and authorized by statute. 35 U.S.C. §§ 120, 121. There is no dispute that the continuation practice followed by Plaintiffs is common. However, Plaintiff could have submitted the remaining three inventions in 1991 as separate independent patents. Defendant alleges this Plaintiff should have immediately submitted separate patents, and that to delay continuation applications over eight years was unreasonable. Plaintiff DCI protests Defendant's motion as frivolous and requests attorneys fees.

## ANALYSIS

This matter is before the Court on summary judgment. The Court grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## I. *Prosecution Laches*

■ Laches is a common equitable defense, and in patents the typical laches issue is that a patent owner unreasonably and inexcusably delays *filing suit* for infringement, with material prejudice to the alleged infringer. *See Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463–64 (Fed.Cir. 1998). Defendant pursues a different laches theory. Defendant claims Plaintiff's continuation applications unreasonably delayed in *filing patents,* and Plaintiff should therefore be barred from prosecuting infringement of those patents. Courts developed and applied this basic theory of prosecution laches in the 1920's and 1930's. *See, e.g., Woodbridge v. United States,* 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923); *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265 (1938). Since, most published and unpublished opinions have rejected the argument that prosecution of otherwise lawful continuation applications could be barred by laches. *See, e.g., Progressive Games v. Amusements Extra,* 83 F.Supp.2d 1180 (D.Colo.1999); *Ford Motor Co. v. Lemelson,* 42 U.S.P.Q.2d 1706 (D.Nev.1997); *Advanced Cardiovascular Sys. v. Medtronic Inc.,* 41 U.S.P.Q.2d 1770 (N.D.Cal.1996). This year, however, the Federal Circuit revived the defense of prosecution laches. *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1363 (Fed. Cir.2002). *Symbol* announced the following rule: the equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution *even though the applicant complied with pertinent statutes and rules. Id.* at 1363 (emphasis added).

If the prosecution laches doctrine were ever to apply to filing patents, it would apply in the *Symbol* case. The assignee of Jerome H. Lemelson's 185 unexpired patents and many pending patent applications sued for infringement of patent applications filed in 1954 and 1956 regarding machine vision and automatic identification technology. *Id.* at 1363. In 1998, forty years after these patent applications were filed, Lemelson began to send letters to bar code scanner customers claiming the devices they used infringed his patents. *Id.* By delaying disclosure and issuance, as demonstrated in *Symbol,* a plaintiff might unfairly attempt to claim an invention once an industry is fully developed and commercialized. The lower court in *Symbol* rejected the laches defense for delays in continuation applications. The Federal Circuit reversed and remanded the matter on the grounds of prosecution laches. Consequently, the Federal Circuit's laches defense, and what action constitutes an "unreasonable and unexplained delay," has yet to be fleshed out through application.

The Supreme Court cases of the 1920's and 1930's provide little guidance in how to determine in the instance case if there has been an unreasonable and unexplained delay. The first ruling identified by the *Symbol* court is *Woodbridge v. United States,* 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923). *Woodbridge* concerned an inventor of particular cannon projectiles who was informed in 1852 by the Patent Office that they would issue a patent on his request. 263 U.S. at 52, 44 S.Ct. 45. Woodbridge requested that the Patent Office not issue the patent, but file it in the secret archives for one year, the maximum allowed term, so that he could prosecute the patent overseas. *Id.* at 52–53, 44 S.Ct. 45. Woodbridge delayed, however, and no action on the patent was taken by him or the Patent Office for nine and a half years. In 1861, near the outbreak of the civil war, Woodbridge requested that his patent be issued, now that there was significant demand for his invented projectile and he stood to profit. *Id.* at 53, 44 S.Ct. 45. Not surprisingly, the Court rejected his claim

on the grounds of "delay or laches." *Id.* at 51, 44 S.Ct. 45.

*Symbol* describes and explains three other relevant early Supreme Court cases. *Webster v. Splitdorf,* 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792 (1924); *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.,* 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265 (1938); *General Talking Pictures v. W. Elec. Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938). While these cases clearly establish the existence of a laches defense, this Court also finds them difficult to apply to the current matter. *Crown Cork* causes particular confusion in holding that delay is less prejudicial for purposes of a laches defense in the absence of "intervening adverse rights." 304 U.S. at 167–68, 58 S.Ct. 842; *see also General Talking Pictures,* 304 U.S. at 183, 58 S.Ct. 849. Courts have had a difficult time discerning, and have disagreed on, what "intervening adverse rights" meant in 1938 and how to apply the holding today. *See Progressive Games v. Amusements Extra,* 83 F.Supp.2d at 1184 n. 1.

Plaintiff DCI makes three arguments why prosecution laches does not apply to this matter. First, DCI contends that *Symbol* is limited to cases where continuation applications extend the life of a patent. In this case, the term of patent protection has not been extended, Plaintiff argues, because DCI has either: (1) voluntarily limited the patents' term of protection through a terminal disclaimer; or (2) the life of the patents has been limited by law through the General Agreement on Tariffs and Trade ("GATT"), as incorporated into United States law. Second, Plaintiff argues that Defendant McLaughlin has failed to demonstrate intervening adverse rights. Finally, Plaintiff contends that their delay in filing continuation applications was both reasonable and explained.

*A. GATT and Terminal Disclaimer Process*

DCI argues that prosecution laches only applies to continuation patent practice that extends the life of the patent, as the possibility existed before GATT was incorporated into United States law in 1995. Plaintiff would have the Court limit the *Symbol* decision to those patents filed before GATT that do not have a terminal disclaimer limiting the life of the patent. The Court will not so limit the *Symbol* decision, but the limitations on the life of patents effectuated by GATT and terminal disclaimers help interpret whether any delay is unreasonable.

Before changes by the GATT treaty to patent law, continuation practice arguably allowed for inventors to effectively extend patent protection significantly beyond the general 20 year life of a patent. A continuation application receives the benefit of the earlier filing date of the parent patent. GATT was incorporated into United States law on June 8, 1995, and continuation patents filed after GATT became effective have the same termination date as the parent patent. 35 U.S.C. § 154(a). However, continuation patents filed before GATT took effect independently received 17 years of protection. Consequently, a continuation patent filed before GATT could provide protection for years after the parent patent had expired. *Symbol,* 277 F.3d at 1371. Arguably this prior provision of continuation practice law allowed an inventor to effectively extend the life of a patent beyond the envisioned 20 year limit. The issue of extending the life of a parent patent through continuation applications is not before the Court. All of Plaintiff's patents filed after 1995 have the same termination date as the parent patent. Plaintiff has also filed terminal disclaimers for their continuation patents filed before GATT took effect, so that all

the patents at issue in this case expire in 2011, approximately 20 years after the filing date of the parent patent.

Plaintiff's argument has support in dissents in the early Supreme Court cases and in *Symbol*. Courts have primarily exhibited concern over the extension of patent protection beyond the basic 20 years. Justice Black, in his dissent in *Crown Cork* noted this incongruity: "Thus, sweeping, indefinite and unclaimed disclosures, and adroit use of 'divisionals'—which laches and unreasonable delay are no longer sufficient to bar—are permitted to extend a patent's statutory life and to increase a patentee's reward beyond that granted by Congress." 304 U.S. at 174, 58 S.Ct. 842 (J. Black dissenting). The dissent in *Symbol* suggests that the case does no more than extend GATT to patent applications filed before 1995:

> In connection with the Uruguay round of the General Agreement on Tariffs and Trade the United States agreed to limit the life of all future patents to twenty years from the filing of the earliest application from which priority is claimed.... However, despite urging by interests including these plaintiffs, the change was not made applicable to existing patents or to pending applications filed before June 8, 1995. The present ruling will achieve the retroactive effect that was legislatively rejected. 277 F.3d at 1371 (J. Newman, dissenting).

Between them, GATT and the *Symbol* decision address prior abuses in continuation or similar practices.

As tempting as it may be to draw a simple, bright-line rule that there is no laches defense after GATT in continuation patents, this Court does not believe that this conclusion can be drawn from *Symbol*. *Symbol* requires a court to examine whether delay is unreasonable and unexplained. Although GATT and terminal disclaimer process may reign in abuse, a reasonable fact-finder might find that certain calculated delays in filing continuation applications, though on a lesser scale than the facts in *Symbol*, nonetheless constitute an unreasonable and unexplained delay. GATT and terminal disclaimer process do, however, tend to make delays more reasonable, since the impact of delay is less for a patent filed after GATT or subject to a terminal disclaimer. Accordingly, this Court will not limit *Symbol* to patent applications filed before GATT or subject to terminal disclaimers.

## B. Intervening Adverse Rights

As noted above, early Supreme Court cases indicate that, absent intervening adverse rights, prosecution laches does not attach. The parties dispute what intervening adverse rights are. Defendant insists they have intervening adverse rights because they spent money developing the device. (Def.'s Mot. at 20.) Plaintiff argues that mere investment and sales is insufficient to create intervening adverse rights. (Pl.'s Resp. at 8.) *Crown Cork* suggests an intervention is an "intervening patent or publication." 304 U.S. at 158, 58 S.Ct. 771. But *Symbol* explicitly states that there is no requirement that laches only applies when there are dueling patents, or "interferences." 277 F.3d at 1365–66.

The term intervening adverse rights appears to arise from the practice of reissue patents, where an original patent is modified because of mistake. *Progressive Games v. Amusements Extra*, 83 F.Supp.2d at 1184. Reissue patents are distinct from continuation applications. A continuation application covers the same device disclosed by the parent patent, but states different claims. In contrast, the statute on reissue patents allows for intervening rights for a device not disclosed by the original patent, but only by the later

reissue. 35 U.S.C. § 252. Intervention rights arise when a reissue patent covers a prior-existing device not disclosed in the original patent. By statutory definition, this scenario cannot arise in a continuation application, because the parent patent discloses the device from which the continuation patent claims. 35 U.S.C. §§ 120, 252. Consequently, the Court is not convinced that an examination of intervening adverse rights is a useful concept in prosecution laches when addressing continuation applications. Even were the Court to consider intervening adverse rights, Defendant has not shown that Plaintiff's continuations effectively constituted a reissue. Defendant describes how it manufactured various devices, but does not show that the their devices were not covered by the parent patent disclosures. The Court, then, proceeds to determine if Plaintiff's delay in filing continuation applications was unreasonable and unexplained.

### C. Unreasonable and Unexplained Delay

In accordance with *Symbol*, this Court on summary judgment determines if, as a matter of law, the equitable doctrine of laches may be applied to bar enforcement of the patent claims at issue because of Plaintiff's unreasonable and unexplained delay in prosecution. Clearly there is a genuine issue of material fact regarding whether DCI's delay was unreasonable and unexplained. DCI has introduced effectively unrebutted testimony that continuation practice is common. Plaintiff did not wait on their patent applications while taking no action for decades, as was the case in *Symbol*. Rather, Plaintiff filed continuations after the PTO rejected their original patent proposal. It is undisputed that Plaintiff disclosed their device in the initial patent. Moreover, Defendant has failed to show that their devices, as well as Plaintiff's continuation applications, were not covered or anticipated by the parent patent disclosure. The Court cannot con-clude that Plaintiff's delay was, as a matter of law, unreasonable and unexplained. Defendant's motion for partial summary judgment is DENIED.

### II. Plaintiff's request for a 56(f) continuance

Under 56(f), the Court may order a continuance or refuse judgment if the party opposing the motion "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R.Civ.P. 56(f). Plaintiff asks for a continuance to conduct discovery if the Court reaches the merits of the unreasonability issue. This request is MOOT since Plaintiff has presented sufficient facts to prevail on the issue of unreasonable or unexplained delay.

### III. Attorneys fees

■ Because the Federal Circuit's revival of prosecution laches raises many questions of interpretation, the Court cannot conclude that Defendant's motion is frivolous. Plaintiff's request for attorneys fees is DENIED.

### CONCLUSION

Defendant's motion for partial summary judgment is DENIED because a genuine issue of material fact exists regarding whether Plaintiff's delay in prosecuting patents was unreasonable and unexplained. (Dkt. No. 78.) Plaintiff's motion for a continuance is MOOT. Because the law of prosecution laches is unsettled, Plaintiff's motion for attorneys fees is DENIED.

The Clerk is directed to send copies of this order to all counsel of record.