**In re Stephen B. BOGESE II.**

No. 01–1354.

United States Court of Appeals,
Federal Circuit.

Sept. 13, 2002.

Perry J. Saidman, Saidman DesignLaw Group, of Silver Spring, MD, for appellant.

John M. Whealan, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, for appellee. With him on the brief were Henry G. Sawtelle and Linda Moncys Isacson, Associate Solicitors.

Before NEWMAN, DYK, and PROST, Circuit Judges.

DYK, Circuit Judge.

Stephen B. Bogese II ("Bogese") appeals from a decision of the Board of Patent Appeals and Interferences ("Board") rejecting all claims of his application for patent, serial number 08/376,290 ("the '290 application"). *Ex parte Bogese II,* Appeal No.1998–1360 (Bd. Pat. Apps. & Int., Sep. 25, 2000). The Board held that the claims were unpatentable under 35 U.S.C. § 103 and that Bogese had forfeited his right to a patent under the doctrine of prosecution history laches. Because the Board's decision that Bogese had forfeited his right to a patent was not arbitrary, capricious, or contrary to law, we affirm. Because we hold that Bogese forfeited his right to a patent, we do not reach the issue of whether the claims are unpatentable under 35 U.S.C. § 103.

## BACKGROUND

Bogese's alleged invention relates to "[a]n electrical connector ... serv[ing] as an interface between a standard miniature telephone plug and a printed circuit board." More particularly, the invention relates to a connector for use with both miniature telephone plugs and printed circuit boards, which are designed using different standards. The invention permits quick connections between telephone wires and electrical connectors used in computers.

This case has a long history. The '290 application at issue here claims priority back to the June 14, 1978, filing date of application serial number 05/915,457 ("the '457 application"). No patent issued from the '457 application, which was abandoned in favor of a continuation application, serial number 06/120,846 ("the '846 application"), on February 12, 1980.[1] Prosecution of the '846 application twice reached this court on appeal from a Board rejection. On March 23, 1984, we affirmed-in-part and reversed-in-part the Board's rejection and remanded the case to the Board. *In re Bogese,* 732 F.2d 169 (Fed.Cir.1984) (Table) (unpublished opinion). We affirmed the Board's rejection of Bogese's broad claims but reversed its rejection of Bogese's narrow claims directed to telephone modular jack connectors because we concluded that a particular reference not relied on by the Board was pertinent, and Bogese had not had an opportunity to address an argument that those narrow claims were obvious in light of that and other references. On March 16, 1987, we summarily affirmed the Board's rejection of all pending claims as obvious under 35 U.S.C. § 103 in a two sentence opinion. *In re Bogese,* 818 F.2d 877 (Fed.Cir.1987) (per curiam) (Table) (unpublished opin-

---

1. On December 10, 1980, Bogese filed a "continuation-in-part" application, serial number 06/215,054 ("the '054 application") based on the '846 application. A "continuation-in-part" application was permitted under 37 C.F.R. § 1.62, in effect at the time, and allowed applicants to file a continuing applica-tion and simultaneously add new matter to the specification. The '054 application and its progeny eventually led to the issuance of at least five U.S. patents claiming various aspects of Bogese's connector technology, including U.S. Patent Nos. 4,457,570, 4,501,-464, 4,577,921, 4,717,217, and 5,478,261.

ion).[2]

After our second decision, on April 6, 1987, Bogese filed a file wrapper continuation application, serial number 07/033,855 ("the '855 application") and abandoned the '846 application.[3] Bogese did not amend the claims that were the subject of our March 1987 decision, nor did he offer any argument addressing the rejection of those claims. Therefore, on July 13, 1987, the examiner issued a final rejection of all claims of the '855 application on the basis of our 1987 decision and as obvious in light of several prior art references.

On January 13, 1988, Bogese filed a new file wrapper continuation application, serial number 07/144,687 ("the '687 application"),[4] and then abandoned the '855 application. Again, Bogese did not amend the claims that previously had been rejected by the PTO and this court or make any argument that the claims should be allowable. Therefore, the examiner again issued a final rejection on April 26, 1988. On October 26, 1988, Bogese filed a file wrapper continuation application, serial number 07/267,724 ("the '724 application"), and then abandoned the '687 application. Bogese's pattern of receiving a final rejection from the PTO, not amending his application or claims, filing a file wrapper

continuation application exactly or almost exactly six months later without any amendments, and abandoning his prior application, occurred eight more times between 1989 and 1994, culminating in the filing of application serial number 08/266,-804 ("the '804 application") on June 28, 1994.

In the examiner's final rejection of the '804 application mailed on August 22, 1994, the examiner expressly warned appellant:

> [T]he next continuation of this series may be rejected by invoking the equitable doctrine of laches, absent any substantive amendment to advance prosecution.

The doctrine of laches, meaning undue delay in claiming one's rights, may result in the loss of those rights. In this case, the loss may be the right to a priority date, or the right to a patent.

The case record shows a plurality of continuations with no substantive amendments to advance prosecution, which, in effect, may be using the Patent Office and patent laws as a means for officially suppressing or overlooking any invention disclosed, but not yet claimed, thereby obtaining inequitable benefits of the patent system.

Priority of invention requires reasonable diligence of one first to conceive, and

---

**2.** The opinion stated: "[t]he final decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (board) affirmed the examiner's final rejection under 35 U.S.C. § 103 of all remaining claims in the patent application of Stephen B. Bogese, II, serial No. 120,846. On the basis of the board's July 15, 1986, opinion, the said final decision is *affirmed." In re Bogese*, No. 86–1699, slip op. at 1, 818 F.2d 877 (Fed.Cir.1987) (emphasis in original).

**3.** Under 37 C.F.R. § 1.62, in effect at the time, applicants could file a "file wrapper continuation" application, which had the effect of abandoning the pending application

and physically transferring the file history of the abandoned application into a new application for further prosecution. The new application contained the same claims and specification that existed in the abandoned application.

**4.** Under 35 U.S.C. § 133 and 37 C.F.R. § 1.134, Bogese was required to file his file wrapper continuation application within six months of the final rejection of the claims in the parent application to preserve the priority date of the parent application.

last to reduce to practice (filing and claiming). See 35 U.S.C. § 102(g).

Prompt disclosure to the public, with no undue delay, is required for consideration of a patent grant. See *Ex parte Hull*, 191 USPQ 157, 1975 WL 20742 [USPTO Bd. of Apps.] 1975.

(Emphasis added).

Despite the examiner's warning, on January 23, 1995, Bogese filed another file wrapper continuation application, serial number 08/376,290 ("the '290 application") without making any amendment or argument regarding the claims that had been rejected. In an Office action mailed March 16, 1995, the examiner rejected all the pending claims for three reasons: "on the doctrine of Res Judicata based on the decision of the Court of Appeals for the Federal Circuit dated March 16, 1987"; as being unpatentable under 35 U.S.C. § 103 in view of several prior art references; and because "applicant has forfeited the right to a patent." The examiner explained the last reason as follows:

Applicant has pursued a deliberate and consistent course of conduct that has resulted in an exceptional delay in advancing the prosecution and the issuance of a patent. The record shows that a decision by the Court of Appeals for the Federal Circuit dated March 16, 1987, for application 06/120,846, which is a continuation of 05/915,457, filed June 14, 1978. Subsequent to the above CAFC decision, Applicant has filed 11 patent applications in which Applicant has clearly made no attempt to advance the examination of the claimed invention. The effect has been to postpone the issuance and term of a patent that it would appear that applicant has always intended to secure. Applicant has deliberately postponed meaningful prosecu-

tion, deliberately postponed the grant of any patent to which he may be entitled, and deliberately postponed the free public enjoyment of any invention on which a patent may have issued. These deliberate actions are an evasion of the patent statute and defeat its benevolent aim. *Woodbridge v. United States*, 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923).

On September 18, 1995, Bogese for the first time made a substantive response to the Office action by amending the claims of the '290 application and submitting affidavits in support of his arguments that his claimed invention was not obvious. Bogese also traversed the forfeiture rejection, urging that "[i]t cannot be the law that one who has complied with clear statutory authority in all respects has somehow forfeited his right to a patent." Bogese urged that at all times during prosecution of his chain of applications he had complied with the requirements of 35 U.S.C. § 120, and therefore, was entitled to the benefit of the original June 14, 1978, priority date and to a patent. The examiner was not persuaded by Bogese's amendments and arguments and, on November 28, 1995, again rejected all the pending claims. Following a December 31, 1995, request for reconsideration and February 21, 1996, Advisory Action, appellant filed a notice of appeal to the Board on November 8, 1996.

In its September 25, 2000, decision the Board refused to sustain the examiner's rejection based on *res judicata* because Bogese, in response to the examiner's rejection, had amended his claims after they had been rejected by this court in our 1987 decision. However, the Board sustained the examiner's rejection based on 35 U.S.C. § 103 because Bogese's claimed invention would have been obvious to one of ordinary skill in the art in light of the cited

references. Furthermore, the Board sustained the examiner's rejection based on Bogese's forfeiture due to his delay in prosecuting the patent applications. The Board cited the general grant of power to the PTO to examine and issue patents (provided by 35 U.S.C. § 131) and a prior Board opinion, *Ex parte Hull,* 191 USPQ 157, 159, 1975 WL 20742 (1975), as providing the authority for the rejection based on forfeiture. The Board found that:

> From our viewpoint, the conduct of the appellant from March 1987 until September 18, 1995, which effectively permitted the appellant to retain the benefit of the filing date of June 14, 1978 while at the same time delaying prosecution of the applications, is so egregious in defeating the policy of the patent laws of promoting science and the useful arts as to be presumed unreasonable in light of all the circumstances in this case. In particular, we note that, as evidenced by the documents filed in support of the petition to make special (Paper No. 13) in Application No. 06/120,846, which was granted (Paper No. 14), on the basis of infringing activity by competitors, the appellant was keenly aware, as early as the summer-fall of 1979, that connectors embodying the appellant's invention were being developed and exploited commercially in the market place.

*Ex parte Bogese II,* slip op. at 33–34, 818 F.2d 877. The Board explained that the harm of extraordinary delay in prosecution is not only in delay in disclosure of the invention to the public but also the "deliberate delay of the term of any monopoly granted by a patent ... when the industry has developed and matured to such a point as to be more financially beneficial to the applicant and hence more harmful or prejudicial to the public." *Id.* at 35, 818 F.2d

877. The Board held that an inventor who, "intentionally or by reason of culpable neglect, is guilty of action which unduly postpones the time the public would be entitled to the free use of the invention has thus defeated the policy of the patent law, thereby losing the right to a patent, regardless of whether the delay in the patent term also results in delay of the disclosure of the invention to the public." *Id.* at 35–36, 818 F.2d 877 (citation omitted). Finally, the Board stated that Bogese could not "flout the examiner's requirement that any future request for a file wrapper continuation be accompanied by a substantive amendment to advance prosecution and then claim to have prosecuted an application in compliance with the applicable patent statute and regulations." *Id.* at 37, 818 F.2d 877.

Bogese filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I

Our review of a decision of the Board is governed by the Administrative Procedure Act, 5 U.S.C. § 706. *Dickinson v. Zurko,* 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930, 1937 (1999). Under that statutory provision, we will set aside legal actions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and set aside factual findings that are "unsupported by substantial evidence." 5 U.S.C. § 706; *In re Gartside,* 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1776 (Fed. Cir.2000).

### II

On this appeal the primary issues are: (1) whether the PTO is authorized to reject

a patent application where the applicant fails to advance prosecution of his application for an unreasonably long period; and (2) if the PTO is so authorized, whether it acted arbitrarily in rejecting the applicant's patent application here. Bogese contends that no statutory, regulatory, or case law support exists for the PTO's action in this case. We disagree.

### III

■ In *Symbol Technologies, Inc. v. Lemelson Medical*, 277 F.3d 1361, 1368, 61 USPQ2d 1515, 1520 (Fed.Cir.2002), in the context of an infringement case, this court recently held that the equitable doctrine of laches may be applied to bar enforcement of a patent that issued after unreasonable and unexplained delay in prosecution, even though the patent applicant complied with pertinent statutes and rules. We found that the Supreme Court had recognized the doctrine of prosecution history laches in at least four decisions, including *General Talking Pictures Corp. v. Western Electric Co.*, 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273, 37 USPQ 357 (1938), *Crown Cork & Seal v. Ferdinand Gutmann Co.*, 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265, 37 USPQ 351 (1938), *Webster Electric Co. v. Splitdorf Electrical Co.*, 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792 (1924), and *Wood-*

*bridge v. United States*, 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923). Further, the passage of the Patent Act of 1952, Pub.L. No. 82–593, 66 Stat. 792, specifically those sections now codified at 35 U.S.C. §§ 120 and 121, which entitled continuation and divisional applications to the filing dates of their parent applications, did not foreclose the application of prosecution history laches to bar enforcement of a patent claim. *Symbol Techs.*, 277 F.3d at 1365–66, 61 USPQ2d at 1518. Thus, in *Symbol Technologies* we held that a patent may be rendered unenforceable if it was obtained after an unreasonable and unexplained delay in prosecution.

Whatever the views of the individual panel members concerning the correctness of our decision in *Symbol Technologies*, we are nonetheless bound by it, and we see no basis for denying the power to the PTO itself that we have recognized exists in the district courts in infringement actions. It necessarily follows that the PTO has the authority to reject patent applications for patents that would be unenforceable under our holding in *Symbol Technologies*.

■ Indeed, we think the PTO's authority to sanction undue delay is even broader than the authority of a district court to hold a patent unenforceable.[5] The PTO is

---

5. Although the PTO, both in the Board decision below and in its brief on appeal, relies on 37 C.F.R. § 1.111 as supporting its action, *Ex parte Bogese II*, slip op. at 37, n.14, 818 F.2d 877, Appellee's Brief at 4, 18, 38, 43, 49, and 50, that section appears to be inapplicable here. That section provides "[t]he applicant's or patent owner's reply must appear throughout to be a *bona fide* attempt to advance the application ... to final action." 37 C.F.R. § 1.111(b) (2001) (emphasis in original). The cited section, both as it existed in 1995, and currently, applies to replies to Office actions. *See* 37 C.F.R. § 1.111(a) (1995) ("After the Office action, if adverse in any respect, the

applicant or patent owner, if he or she persists in his or her application for a patent or reexamination proceeding, must reply thereto and may request reconsideration or further examination, with or without amendment."); 37 C.F.R. § 1.111(a)(1) (2001) ("If the Office action after the first examination (§ 1.104) is adverse in any respect, the applicant or patent owner, if he or she persists in his or her application for a patent or reexamination proceeding, must reply and request reconsideration or further examination, with or without amendment."). Section 1.113 effectively defines a reply as including an appeal, amendment, or petition. *See* 37 C.F.R. § 1.113(a)

the administrative agency that is "responsible for the granting and issuing of patents. . . ." 35 U.S.C. § 2 (2000). Like other administrative agencies, the PTO may impose reasonable deadlines and requirements on parties that appear before it. The PTO has inherent authority to govern procedure before the PTO, and that authority allows it to set reasonable deadlines and requirements for the prosecution of applications.[6]

■■■ To be sure, an administrative agency cannot impose a penalty or forfeiture without providing notice. *United States v. Chrysler Corp.*, 158 F.3d 1350, 1354 (D.C.Cir.1998); *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C.Cir.1995). Here, Bogese does not claim that he was not provided with notice of what the PTO required of him or the potential consequences of non-compliance. Bogese here received ample notice that an unreasonable delay could result in forfeiture. First, in *Ex parte Hull*, 191 USPQ at 157, the PTO forecast its present ruling. In *Hull*, the applicant filed a chain of six continuation-in-part applications between 1963 and

1971. *Id.* at 158, 1975 WL 20742. Each continuation-in-part application was filed after the PTO had allowed the claims in the parent application and just prior to the date the issue fee for the parent application was due. *Id.* Each continuation-in-part application was filed with claims that corresponded either exactly or substantially to each of the claims in the parent application that previously had been allowed, as well as claims that were drawn to features that were disclosed in the continuation-in-part application for the first time. *Id.* The examiner rejected all claims of the last application of the chain on the ground of laches because by not allowing any of the previously allowed applications to issue as a patent, Hull had unjustifiably delayed the time that the public could enjoy the free use of the invention covered by the claims. *Id.* at 157, 1975 WL 20742. The Board reversed the examiner because:

[A] rejection on the basis [of laches], without prior warning in a preceding allowed application is inequitable. However, the appellant is hereby put on notice, that the filing of a future applica-

---

(2001) ("On the second or any subsequent examination or consideration by the examiner the rejection or other action may be made final, whereupon applicant's, or . . . patent owner's reply is limited to appeal in the case of rejection of any claim (§ 1.191), or to amendment as specified in § 1.114 or § 1.116. Petition may be taken to the Commissioner in the case of objections or requirements not involved in the rejection of any claim (§ 1.181).") However, a file wrapper continuation application, governed by section 1.60 of the 1995 regulations, is not included with the definition of a reply. While section 1.111 recognizes the general requirement of good faith in prosecution, its terms are not directly applicable to file wrapper continuation applications.

6. The dissent suggests that *In re Henriksen*, 55 C.C.P.A. 1384, 399 F.2d 253, 158 USPQ 224

(CCPA 1968), is to the contrary. In *Henriksen* the PTO adopted "a literal reading of section 120 . . . that the law permitted claiming only the benefit of a sequence of two or three applications and no more." *Id.* at 256. The limited holding in that case, which was based on a detailed review of the legislative history of the 35 U.S.C. § 120 and the long-standing interpretation by the Patent Office and patent bar, was that the statute itself "provides no limit to the number of applications that may be copending." *Id.* at 260–61. In this case the PTO did not adopt a mechanical rule based on a misconstruction of the statutory requirements. Nowhere does *Henriksen* suggest or imply that the PTO must allow dilatory tactics in the prosecution of applications or that the PTO lacks inherent power to prohibit unreasonable delay in prosecution.

tion in this series without permitting the present application to issue may result in a sustainable rejection based on his conduct which we find contrary to the purposes of the Constitution and patent laws.

*Id.* at 160, 1975 WL 20742. Second, the appellant here received the specific warning that *Hull* found necessary. During the course of adjudicating the patentability of Bogese's patent claims and after Bogese had filed eleven file wrapper continuation applications over an eight-year period, the examiner required Bogese to make a "substantive amendment to advance prosecution" or risk losing his right to a patent. Bogese had an opportunity to respond to the PTO's requirement after the PTO gave that notice, but he did not, and instead filed another file wrapper continuation application without making a substantive amendment to advance prosecution.

On appeal, Bogese makes no serious claim that the PTO acted unreasonably on the facts of this case in requiring him to make a "substantive amendment to advance prosecution" or in finding forfeiture.[7] Rather, Bogese challenges the PTO's authority to require applicants to advance prosecution, urging that he was entitled to continue his chain of continuation applications. We disagree and hold that the PTO has authority to order forfeiture of rights for unreasonable delay. There is no basis for finding the PTO's action to be arbitrary on the facts of this case, given that Bogese filed twelve continuation applications over an eight-year period and did not substantively advance prosecution of his application when required and given an opportunity to do so by the PTO.

Appellant makes a number of additional arguments, which we conclude are without merit.

First, appellant argues that much of the delay in prosecution was due to the actions of the PTO and not those of the appellant. Appellant regards as particularly important the "cumulative delay of 30 months between the filing of each of Appellant's 11 continuation applications and issuance of substantially identical first Office action final rejections." Appellant's Reply Br. at 13. However, a delay by the PTO cannot excuse the appellant's own delay.

Second, appellant cites *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235–36, 224 USPQ 418, 423–24 (Fed.Cir. 1985), for the proposition that it is permissible to "maintain[ ] pendency of an application ... while competitors' products appear on the market in an effort to later draft and obtain the allowance of claims that read on the competitors' products." Appellant's Reply Br. at 21. An applicant's attempt to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application, however, is easily distinguishable from appellant's failure to further the prosecution of his application toward the issuance of any claims.

Accordingly, we hold that the PTO did not err in rejecting Bogese's claims because Bogese forfeited his right to a patent.

For the foregoing reasons, we *affirm.*

---

**7.** In his reply brief in this court, as in his reply brief before the Board, appellant urges that the delay in prosecution should be excused based on "a flood that destroyed Appellant's corporate offices and ... diverted Appellant's attention to saving his company." The Board properly found these claims to be unsupported. *Ex parte Bogese II*, slip op. at 34, 818 F.2d 877.

COSTS

No costs.

NEWMAN, Circuit Judge, dissenting.

In *Symbol Technologies, Inc. v. Lemelson Medical, Education & Research Foundation,* 277 F.3d 1361, 61 USPQ2d 1515 (Fed.Cir.2002), this court established a new defense to the charge of patent infringement, holding that an inventor's delay in obtaining his patent could bar enforcement of the patent in an infringement suit, by virtue of application of the equitable doctrine of laches. Although that holding now binds us, it is restricted to its facts and should be limited in availability to defendants in infringement suits. As I explained in dissent in *Symbol Technologies,* the placement of a limit on the filing of continuing applications has been consistently rejected by Congress and the technology community, as a separate question from whether the refiling caused undue delay or prejudice.

Even with "prosecution laches" available as a defense to the charge of infringement, based on a showing of prejudice, there is no basis on which to grant authority to the patent examination agency to impose its own non-statutory time limits for examination purposes, and to refuse to grant a patent on an otherwise patentable invention. Indeed, if such action by the patent examining staff is ultimately deemed appropriate, this authority cannot be arrogated at PTO initiative, but requires legislative authorization.

In the Bogese application the Patent and Trademark Office accomplishes what has been explicitly prohibited to it. The PTO does not have the right to adopt administratively a position that has been expressly denied by binding precedent. In *In re Henriksen,* 55 C.C.P.A. 1384, 399 F.2d 253, 158 USPQ 224 (CCPA 1968) the court held that "there is no statutory basis for fixing an arbitrary limit to the number of prior applications through which a chain of copendency may be traced to obtain the benefit of the filing date of the earliest of a chain of copending applications, provided applicant meets all the other conditions of the statute." The patent examining process is a creature of statute, and operates on the premise that the inventor is entitled to a patent if the statutory requirements are met. 35 U.S.C. § 102 ("A person shall be entitled to a patent unless—. . . ."). The court today extends to patent examiners a new power to deny a patent on the ground that the applicant dawdled too long in prosecution.

The examiner herein realized there was no statutory basis for this action, and purported to rely on "the equitable doctrine of laches." Equitable determinations are generally reserved to the courts, which may on occasion depart from statute in order to reach a just result, in order to ameliorate an injustice flowing from the letter of the law. But it is rare indeed to invoke equitable considerations in order to punish someone who has not violated the law. The equitable power is intended to remedy harsh application of law, not to impose new penalties on those who abide by the law. Justice Story explained:

> [Equitable relief] is not a matter of right in either party; but is a matter of discretion in the Court; not of arbitrary or capricious discretion, dependent upon the mere pleasure of the Judge, but of that sound, and reasonable discretion, which governs itself, as far as it may, by general rules and principles; but at the same time, which withholds or grants relief, according to the circumstances of

each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

Joseph Story, *Equity Jurisprudence* § 742 (1st ed. 1836). *See, e.g., Hecht Co. v. Bowles*, 321 U.S. 321, 329–330, 64 S.Ct. 587, 88 L.Ed. 754 (1944) (equity invokes "the qualities of mercy and practicality"); *Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 321 (1st. Cir.1989).

Although courts have the judicial power to depart from the letter of the law when justice warrants, the panel majority errs in viewing the PTO's power as "broader" than that of a court. This new agency power to eliminate the right to a patent, as a matter of the examiner's equitable discretion, transcends the authority allocated to administrative agencies. Equitable remedies contrary to statute can not be created by an administrative agency as it goes along. Although I do not deny the PTO the authority to provide individual equitable relief from some particularly harsh application of an agency rule, when justice and good practice warrant, equitable discretion is available as a remedy to ameliorate unwarranted distress, not as a punishment of those who stayed within the letter of the law. Agency discretion to relieve an unintended harsh result may well be necessary in the modern administrative state, for the legislature cannot envision every possible situation to which the law may be applied. But all of the examples of administrative discretion of which I am aware involve relief of the regulated party from particularly dire consequences—not the converse. *See, e.g.,* Shapiro, *Administrative Discretion: The Next Stage,* 92 Yale L.J. 1487 (1983) (identifying forms of administrative discretion available where strict application of the law would work a hardship or impose an unfair burden).

Mr. Bogese apparently took unusual advantage of the continuation application law, *see* 35 U.S.C. §§ 120–121, for he filed twelve continuations over a period of eight years. When he finally proceeded with substantive examination, the examiner denied his patent on the ground of undue delay. Nowhere, however, has an agency been authorized to impose, in its discretion, restrictions contrary to the statute that governs agency action. The potential for serious mischief is apparent from the many avenues whereby an applicant may extend prosecution; *see, e.g.,* 37 CFR § 1.103 (request for suspension of prosecution); 37 CFR § 1.136 (request for extension of time to respond). An applicant's recourse to authorized actions may hereafter tempt an examiner to hold, with retrospective force, that the applicant should not have delayed so long.

In *Symbol Technologies* the defendants raised issues of prejudice in the context of infringement litigation, presenting laches as an equitable defense personal to these defendants. Issues of laches in defense have been well defined. *See A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032, 22 USPQ2d 1321 (Fed.Cir.1992) (en banc):

> It is, however, well settled that, to invoke the laches defense, a defendant has the burden to prove two factors: 1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and 2. the delay operated to the prejudice or injury of the defendant.

However, laches as an equitable remedy may be invoked only when the defendant comes before the court with clean hands, and is bound up in the relationship be-

tween the parties and their history of dealing with each other. *See, e.g., Fotta v. Trustees of the United Mine Workers of America, Health and Retirement Fund of 1974,* 165 F.3d 209, 214 (3d Cir.1998) ("Because the remedy we recognize here is equitable in nature, its award involves an exercise of judicial discretion. And, like other equitable remedies, it is subject to equitable defenses ..."). But patent examination is not litigation; there is no "defendant," no prejudice, no issue of injury to the government or clean hands on its part. Of course there is a public interest in early disclosure of technical/scientific information, but with mandatory publication this interest will no longer be affected. Today's holding relies on no more than that this applicant "worked" the system, and overworked it. The proposed remedy transcends the apparent wrong.

The majority remarks that the PTO has the right to promulgate rules for the prosecution of patent applications, and indeed it does. However, there was here no agency rule-making, no public notice and comment period. The avoidance of rulemaking procedures has been fairly criticized. *See Comment, The Exceptions Process: The Administrative Counterpart to a Court of Equity and the Dangers it Presents to the Rulemaking Process,* 30 Emory L.J. 1135, 1165 (1981) ("Congress has demonstrated a sensitivity to the need for public participation in the development of law by agencies both in the APA and in the increasingly rigorous rulemaking standards imposed by recent statutes.")

If a change in the statutory rules of prosecution is deemed appropriate, it should be processed legislatively. An administrative ruling, applied retrospectively against those who complied with the law, is not appropriate. However egregious Mr.

Bogese's delays, he was operating within the law and within the rules. The already burdensome and expensive path to a patent does not benefit from the added encumbrance of an unguided bar that can be imposed as a matter of administrative discretion. The potential abuse in the administrative process appears to far transcend the wrong to be remedied. Amid the complex procedures of patent examination, statute-based rules are preferable to the "unbounded jurisdiction" of the patent examining corps relying on personal views of "equity":

> If, indeed, a Court of Equity in England did possess the unbounded jurisdiction, which has been thus generally ascribed to it, of correcting, controlling, moderating, and even superceding the law, and of enforcing all the rights, as well as the charities, arising from natural law and justice, and of freeing itself from all regard to former rules and precedents, it would be the most gigantic in its sway, and the most formidable instrument of arbitrary power, that could well be devised. It would literally place the whole rights and property of the community under the arbitrary will of the Judge, acting, if you please, arbitrio boni judicis, and it may be, ex aequo et bono, according to his own notions and conscience; but still acting with a despotic and sovereign authority.
>
> ... What an uncertain measure would this be?

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 332–33, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (quoting Joseph Story, 1 *Commentaries on Equity Jurisprudence* § 19, (13th. ed.1988)).

Such persistent, expensive, and burdensome refilings as indulged in by Bogese

are surely rare, and will be more so now that patent life runs from the first filing date, no matter how many times the case is refiled. The solution to such a rare situation is not to add a new ground of examiner discretion, fraught with uncertainty and potential abuse. This new power will simply increase the burden on all applicants, in order to punish a rare transgressor.

It may be that the patent-concerned communities will conclude, after thorough consideration, that there should be new limits imposed on patent prosecution. I would not be troubled by such a law, duly explored and enacted with appropriate guidelines, limits, and prospective effect. My concern is with this new authorization of discretionary action in the examiner, contrary to statute and rule, retrospectively applied to applicants after it is too late to avoid the consequences. From the court's ratification of this action, I respectfully dissent.