**Martin Gardner REIFFIN, Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**No. C 98–266 VRW.**

United States District Court, N.D. California.

Aug. 21, 2003.

Martin Gardner Reiffin, Danville, CA, Pro se.

Norman H. Beamer, Fish & Neave, Palo Alto, CA, Jesse J. Jenner, Fish & Neave, New York City, for Martin Gardner Reiffin.

Thomas W. Burt, Microsoft Corporation, Redmond, WA, Eric L. Wesenberg, Terrence P. McMahon, William L. Anthony, Erin Farrell, Orrick, Herrington & Sutcliffe, LLP, Menlo Park, CA, J. Christopher Carraway, John D. Vandenberg, Joseph T. Jakubek, Klarquist, Sparkman, Campbell, Leigh & Whinston, LLP, Todd M. Siegel, Klarquist, Sparkman, Campbell, Leigh & Whinston, LLP, Portland, OR, for Microsoft Corporation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WALKER, District Judge.

Defendant has raised as a defense and filed a counter-claim alleging that, under the doctrine of prosecution laches, plaintiff should be barred from prosecuting his patent infringement claims against defendant due to the unreasonable and unexplained delay in the prosecution of plaintiff's applications that ultimately resulted in the issuance of the two patents in suit: US Patent Nos 5,694,603 (the '603 patent) and 5,694,-604 (the '604 patent). The equitable issue of prosecution laches was tried to the court without a jury on August 18 and 19, 2003. The court here makes its conclusions of law and findings of fact:

### I. CONCLUSIONS OF LAW

1. The doctrine of prosecution laches was first announced by the Supreme Court in a series of cases in the early to mid twentieth century. See *Woodbridge v. United States,* 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923); *Webster Electric Co. v. Splitdorf Electrical Co.,* 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792 (1924); *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.,* 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265 (1938); *General Talking Pictures Corp. v. Western Electric Company,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938); see also *Utah Radio Products Co. v. Boudette,* 78 F.2d 793 (1st Cir.1935).

2. The Federal Circuit Court of Appeals has recently held that "the equitable doctrine of laches may be applied to bar enforcement of patent claims that issue[ ] after an unreasonable and unexplained delay in prosecution * * *." *Symbol Technologies, Inc. v. Lemelson Medical,* 277 F.3d 1361 (Fed.Cir.2002). Thus, "a patent may be rendered unenforceable if it was obtained after an unreasonable and unexplained delay in prosecu-

tion." *In re Bogese,* 303 F.3d 1362 (Fed. Cir.2002).

3. Although the Federal Circuit, in *Symbol Technologies,* held that the doctrine of prosecution laches may be invoked to bar an infringement prosecution, the Federal Circuit has, as yet, provided no guidance concerning the elements of the defense (or counter-claim) or the burden of proof a defendant must meet to prove prosecution laches.

4. Absent such guidance from the court of appeals and after a review of recent district court opinions employing the doctrine of prosecution laches, the court makes the following conclusions regarding the required elements and attendant burden of proof. See *Digital Control Inc. v. McLaughlin Manufacturing Co., Inc.,* 225 F Supp 2d 1224, 1228 (W.D.Wash.2002); *Intuitive Surgical, Inc. v. Computer Motion, Inc.,* 2002 WL 31833867 (D.Del.2002); *Cummins–Allison Corp. v. Glory Ltd.,* 2003 WL 355470 (N.D.Ill.2003); *Chiron Corporation v. Genentech, Inc.,* 268 F.Supp.2d 1139 (E.D.Cal.2002).

5. There is one element of the defense of prosecution laches that a defendant must prove to prevail on that issue: whether plaintiff unreasonably delayed the prosecution of his patent(s) in a manner that cannot be reasonably explained.

6. A defendant must prove this element by a preponderance of the evidence. See *A C Aukerman v. R L Chaides Construction Co.,* 960 F.2d 1020, 1045 (Fed. Cir.1992) (holding the preponderance of the evidence standard to be "the appropriate evidentiary standard to establish the facts relating to the [traditional] laches issue."); see also *Intuitive Surgical,* 2002 WL 31833867 at *5 n. 4.

7. The test is an objective one: to determine whether any delay in plaintiff's prosecution or explanation for such delay

is reasonable. See *Utah Radio Products,* 78 F.2d at 799 ("[B]ut where laches—unreasonable delay—is the issue, the [applicant's subjective] intent is unimportant.").

■ 8. Whether the applicant has complied with applicable regulations and statutes is not determinative of reasonableness. *Symbol,* 277 F.3d at 1363.

■ 9. Similarly, "a delay by the [United States Patent and Trademark Office (PTO) ] cannot excuse the appellant's own delay." *Bogese,* 303 F.3d at 1369.

■ 10. Reasonableness, rather, depends on whether delay in the prosecution of a patent application can be explained by reference to legitimate considerations and expectations of a reasonable patent applicant. Relevant considerations may include whether:

   a.  the prosecution history of the applicant's patents was typical of patents in that field (or patents generally);

   b.  any unexplained gaps exist in the prosecution history;

   c.  the applicant took any unusual steps to speed or delay the application process;

   d.  the PTO or other reviewing body took any unusual steps to speed or delay the application process;

   e.  the applicant took any steps to limit (or expand) public awareness of his pending application(s) or the inventions he sought to patent during the course of the prosecution;

   f.  any changes in the applicant's prosecution of the application(s) coincide with or directly follow evolutions in the field that relate to the claimed invention; and

   g.  legitimate grounds can be identified for the abandonment of prior applications.

## II.  FINDINGS OF FACT

■ 1. The prosecution history of the '603 and '604 patents spanned a period of approximately 15 years from initial application to ultimate issuance.

2. Plaintiff filed an initial patent application, entitled "Computer System with Real–Time Compilation," on September 28, 1982. He filed a continuation application of the 1982 application in 1985.

3. In March 1990, plaintiff filed a second patent application under the same name as the 1982 application. He filed a continuation application of the 1990 application in 1994.

4. Both the '603 and '604 patents issued, from the 1990 and 1994 applications respectively, on December 2, 1997.

5. The evidence demonstrates that plaintiff's prosecution was atypical, both in its length and in the aggressiveness of the prosecution.

6. The court cannot, however, find that any general rule exists regarding the average or appropriate period for the pendency of a patent application that would support a finding of unreasonable delay based solely on the duration of the prosecution.

7. The parties disputed whether certain periods of inactivity in the prosecution were attributable to actions or inactions of the PTO or other reviewing bodies (e g, the Board of Patent Appeals and Interferences or the Federal Circuit Court of Appeals) or were attributable to amendments, abandonments or other actions of plaintiff, but the record does not establish that plaintiff was principally responsible for the delays in the prosecution.

8. Also atypically, plaintiff's applications were reviewed by three examiners over the time of the prosecution, each of whom cited new prior art against plaintiff's claims to which plaintiff was required to respond.

9. Plaintiff aggressively and repeatedly challenged adverse determinations of the three examiners assigned to his cases. Plaintiff was successful in overturning (whether in part or in whole) a significant number of the adverse determinations he challenged.

10. Most of plaintiff's challenges to adverse determinations were based on plaintiff's belief that the examiners had misconstrued the scope of his claimed invention(s). The evidence does not support a finding that plaintiff misled the examiners in this respect by, for example, failing to bring to the examiners' attention relevant prior art known to, but not cited by, plaintiff.

11. The evidence does not support a finding that the shift in the terminology plaintiff used to characterize his invention(s)—e g, from "compiler-editor" to "text processor" to "multithreading" was the product of an intent to delay the prosecution of his patents. The evidence shows rather that these shifts in terminology followed office or other actions of the examiners or other reviewing bodies that required plaintiff to clarify the claimed scope of his invention(s) and argue against cited art.

12. Plaintiff's problematic litigation tactics were aggressive and combative and contributed significantly to delays in the prosecution, but the evidence does not reflect that these methods were adopted with the intent to interpose delay or with the effect of unreasonably delaying the prosecution of plaintiff's applications.

13. Nor can the court infer from plaintiff's failure to file a "petition to make special" immediately upon turning 65 years old that plaintiff unreasonably delayed the prosecution of his patents. The fact that plaintiff waited roughly two and a half years to file a petition to make special, while necessitating some delay, is not itself sufficient to support a finding that plain-

tiff's prosecution of his applications, taken as a whole, was unreasonable.

14. There are no unexplained gaps in the prosecution history.

15. The evidence does not support a finding that plaintiff attempted to limit public awareness of his invention. A patent applicant has no duty to trumpet his application to the public. And, if anything, plaintiff's publication of his invention in a computer science periodical reflects plaintiff's willingness to publicize his invention(s) to those in the field of the invention(s) prior to the issuance of any patent for the invention(s).

16. The most troubling aspect of plaintiff's prosecution is the fact that changes in claim scope closely tracked external developments in the field. The correspondence between the invention(s) plaintiff claimed with the evolution of the field of computer science is highly suspicious and suggestive of opportunism. Nonetheless, plaintiff's suspicious and suggestive conduct is insufficient to support a finding of unreasonable and unexplained delay.

17. The evidence does not support a finding that plaintiff's decision to abandon the 1982 and 1985 applications and transfer allowed claims from those applications to the 1990 application was, under the circumstances, unreasonable. Taking advantage of a perceived opportunity to broaden the scope of the claimed invention by so doing, plaintiff followed an accepted (if aggressive) prosecution strategy to maximize the scope of the invention(s) to which plaintiff believed himself (arguably) entitled.

18. Although plaintiff later abandoned the claims transferred to the 1990 application, the abandonment of those claims occurred in response to the citation of the *Cheriton* reference by the third examiner. The abandonment of the transferred

claims did not interpose additional delay. Nor does the evidence support a finding that the abandonment of those claims reflected an attempt by plaintiff to change wholesale the scope of his claimed invention from what he had earlier asserted in arguments presented to the examiners.

Based on these conclusions and findings, the court concludes that defendant has failed to prove by a preponderance of the evidence that plaintiff unreasonably and inexplicably delayed the prosecution of the applications that led to the issuance of the '603 and '604 patents. Plaintiff is not barred from prosecuting his patent infringement claims against defendant based on the equitable doctrine of prosecution laches.

IT IS SO ORDERED.