# United States Court of Appeals for the Federal Circuit

04-1451

SYMBOL TECHNOLOGIES, INC., ACCU-SORT SYSTEMS, INC.,
INTERMEC TECHNOLOGIES CORP., METROLOGIC INSTRUMENTS, INC.,
PSC INC., TEKLOGIX CORPORATION,
ZEBRA TECHNOLOGIES CORP., COGNEX CORPORATION,
and TELXON CORPORATION,

Plaintiffs-Appellees,

v.

LEMELSON MEDICAL, EDUCATION & RESEARCH FOUNDATION, LP,

Defendant-Appellant.

Jesse J. Jenner, Ropes & Gray LLP, of New York, New York, argued for plaintiffs-appellees. With him on the brief were Charles Quinn, Krista M. Rycroft, Kenneth B. Herman, William J. McCabe, and Pablo D. Hendler.

Richard G. Taranto, Farr & Taranto, of Washington, DC, argued for defendant-appellant. With him on the brief was Victoria Gruver Curtin, of Scottsdale, Arizona. Of counsel on the brief Gerald D. Hosier, of Las Vegas, Nevada, and Louis J. Hoffman, of Scottsdale, Arizona.

George M. Sirilla, Pillsbury Winthrop LLP, of McLean, Virginia, for amicus curiae National Retail Federation. With him on the brief was Raymond L. Sweigart.

Harold C. Wegner, Foley & Lardner LLP, of Washington, DC, for amicus curiae Takeda Pharmaceutical Co. Ltd. With him on the brief were Stephen B. Maebius, George C. Best, Rouget F. Henschel, and Sean A. Passino.

Frank E. Scherkenbach, Fish & Richardson P.C., of Boston, Massachusetts, for amici curiae Cypress Semiconductor Corp., LSI Logic Corp., Micrel, Inc., and Linear Technology Corp. With him on the brief were Katherine Kelly Lutton, John A. Dragseth, and Christian A. Chu.

Jonathan M. James, Perkins Coie Brown & Bain P.A., of Phoenix, Arizona, for amicus curiae Intel Corporation. With him on the brief were C. Randall Bain and Dan L. Bagatell.

Appealed from: United States District Court for the District of Nevada

Chief Judge Philip M. Pro

# United States Court of Appeals for the Federal Circuit

04-1451

SYMBOL TECHNOLOGIES, INC., ACCU-SORT SYSTEMS, INC.,
INTERMEC TECHNOLOGIES CORP., METROLOGIC INSTRUMENTS, INC.,
PSC INC., TEKLOGIX CORPORATION,
ZEBRA TECHNOLOGIES CORP., COGNEX CORPORATION,
and TELXON CORPORATION,

Plaintiffs-Appellees,

v.

LEMELSON MEDICAL, EDUCATION & RESEARCH FOUNDATION, LP,

Defendant-Appellant.

_____

DECIDED:  September 9, 2005

_____

Before MAYER, LOURIE, and BRYSON, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Lemelson Medical, Education & Research Foundation, LP ("Lemelson") appeals from the declaratory judgment of the United States District Court for the District of Nevada in favor of Symbol Technologies, <u>et</u> <u>al.</u> (collectively, "Symbol") that Lemelson's asserted patent claims are invalid for lack of enablement, unenforceable under the doctrine of prosecution laches, and not infringed.  <u>Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.</u>, 301 F. Supp. 2d 1147 (D. Nev. 2004) ("<u>Symbol III</u>").  Because we conclude that the district court did not abuse its discretion in holding that

Lemelson's patents are unenforceable under the doctrine of prosecution laches, we affirm.

## BACKGROUND

Lemelson is the assignee of approximately 185 unexpired patents and many pending patent applications of the late Jerome H. Lemelson. The patents at issue here generally involve machine vision and automatic identification bar code technology and are asserted to be entitled to the benefit of the filing date of two Lemelson patent applications filed in 1954 and 1956.

In December 1954, Mr. Lemelson filed a patent application that disclosed methods and an apparatus for performing the inspection and measurement of objects. The specification stated: "This invention relates to automatic production equipment and related devices and particularly devices which will perform an automatic operation or operations on work in progress." In 1956, he filed a second application, this time disclosing methods and an apparatus relating to "magnetic recording and particularly to recording means and arrangements whereby video image signals may be used for effecting a multiple of computing, operative, measurement and control functions." Ultimately, in 1963, U.S. Patent 3,081,379 issued from the 1956 application. Before the '379 patent issued, Mr. Lemelson filed a 1963 continuation-in-part ("CIP") application from the 1954 and 1956 applications, adding drawings and text and allegedly combining aspects of the two specifications. In 1972, he further augmented that specification by filing another CIP application, a so-called "common specification," that eventually became the basis for an additional sixteen patent applications filed between 1977 and 1993. Symbol III, 301 F. Supp. 2d at 1153. Fourteen of the resulting patents are before

us.  Claim 12 of U.S. Patent 4,979,029, which resulted from one of those applications, is representative and reads as follows:

> A method for inspecting an image field to determine if a select image phenomenon is present in said image field, comprising:
> (a) scanning an image field containing at least one contrasting image portion which is detectable with an electronic scanning device,
> (b) generating first electrical signals which vary in accordance with variations in detected contrasting image portions of the image field scanned,
> (c) analyzing said first electrical signals and generating first information signals corresponding to the detected contrasting image portions of the image field scanned,
> (d) electrically comparing said first information signals from recordings in a memory which are indicative of said select image phenomenon, and
> (e) generating electrical signals indicative of the presence of said select image phenomenon in said scanned image field.

'029 patent, col. 68, ll. 6-24.

Symbol and its co-plaintiffs design, manufacture, and sell bar code scanners and related machine vision products, including laser and CCD bar code readers.  Symbol III, 301 F. Supp. 2d at 1150.  In 1998, Symbol's customers began receiving letters from Lemelson stating that the use of the plaintiff's products infringed various Lemelson patents.  Symbol claims that it would be forced to indemnify those customers should any of the patents be found to be valid and infringed.  In response, Symbol filed a declaratory judgment action against Lemelson seeking a judgment that the asserted patents[*] are not infringed by Symbol or its customers.  It also sought a judgment that

---

[*]  The patents at issue in this case are U.S. Patents 4,338,626; 4,511,918; 4,969,038; 4,979,029; 4,984,073; 5,023,714; 5,067,012; 5,119,190; 5,119,205; 5,128,753; 5,144,421; 5,249,045; 5,283,641; and 5,351,078.

04-1451                                              3

the patents are invalid under 35 U.S.C. § 101 for lack of utility; § 102 for anticipation; § 103 for obviousness; § 112 for failure to comply with the written description, enablement, and definiteness requirements; and for double patenting. Symbol also asserted that the patents were unenforceable for prosecution laches and inequitable conduct before the U.S. Patent and Trademark Office ("PTO"). Id. at 1151.

Previously, Lemelson had moved to dismiss the case, arguing that there was no case or controversy between the parties and that Symbol's cause of action for prosecution laches failed to state a claim upon which relief could be granted. The district court concluded that there was a sufficient case or controversy, but it dismissed Symbol's prosecution laches claim. Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., No. 99-CV-0397 (D. Nev. Mar. 21, 2000) ("Symbol I").

Symbol filed an interlocutory appeal to this court under 28 U.S.C. § 1292(b), and we agreed to consider "whether, as a matter of law, the equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexpected delay in prosecution even though the applicant complied with pertinent statutes and rules." Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("Symbol II"). We reversed the district court's judgment, rejecting Lemelson's arguments that prosecution laches was limited to claims arising out of interference proceedings and that the passage of the 1952 Patent Act with its provisions for filing continuation and continuation-in-part applications foreclosed the application of laches. Id. at 1365-66. We held instead that Symbol's defense of prosecution laches was legally viable, and we remanded the case to the district court for further proceedings to determine the relevant facts.

Upon remand, the court conducted a bench trial from November 2002 to January 2003, followed by post-trial briefing that concluded in June 2003. In a decision issued in January 2004, the court held that Lemelson's patents were indeed unenforceable due to prosecution laches, invalid for lack of enablement, and not infringed by Symbol's products. First, although acknowledging that Symbol had not demonstrated that Lemelson intentionally stalled in securing the patents, the court stated that "unreasonable delay alone is sufficient to apply prosecution laches without the requirement that Lemelson intended to gain some advantage by the delay." Symbol III, 30 F. Supp. 2d at 1156 (citing In re Bogese II, 303 F.3d 1362, 1369 (Fed. Cir. 2002)). The court also applied the doctrine of prosecution laches because Symbol had presented "strong evidence . . . of intervening private and public rights." Id. at 1157. Accordingly, it held that "Lemelson's 18 to 39 year delay in filing and prosecuting the asserted claims under the fourteen patents-in-suit . . . was unreasonable and unjustified and that the doctrine of prosecution laches renders the asserted claims unenforceable." Id. at 1155.

Next, the court determined whether the various claims in suit were entitled to the filing date that Lemelson claimed. Specifically, Lemelson asserted that sixty-eight of the asserted patent claims that shared the "common specification" were entitled to priority from the 1963 application which in turn claimed priority from the 1954 and 1956 applications. Thus, Lemelson argued that some claims were entitled to a 1954 filing date and others to a 1956 filing date. However, the court rejected those arguments, finding that Lemelson had not shown that the 1963 application was related to the earlier filings in a manner sufficient to justify its status as a CIP application. It determined that

Lemelson "failed to prove that the 1963 Application is a continuation-in-part of the 1954 Application as required under § 120, nor has Lemelson demonstrated the relationship of the 1954 Application to the 1963 Application as required by Patent Office Rule 78(a)." Id. at 1161. The court thus held that Lemelson could not rely on the 1954 or 1956 applications as intrinsic evidence for purposes of claim construction and that the claims were not entitled to the benefit of the 1954 and 1956 filing dates. Id.

A consequence of that holding related to the term "pre-positioning," the significance of which was contested by the parties. As the district court observed, the term "pre-positioning" appears throughout the 1963 specification, which does not disclose any embodiment without pre-positioning. The court held that all the claims must be interpreted to require pre-positioning of the object to be scanned. Id. at 1163. Because the court held that Lemelson could not rely upon the 1954 application, which presents embodiments without such pre-positioning, it held that it could not argue that pre-positioning was not a claim limitation of the claims in suit. The court stated that "[t]his requirement of pre-positioning alone places the products manufactured and sold by Symbol . . . outside the scope of Lemelson's invention." Id. at 1163.

Additionally, the court construed the claim term "scanning" to mean that Lemelson's invention involved "scanning by the use of a television or video camera and not scanning by means of a laser or CCD camera employed by Symbol." Id. at 1164. It reasoned that one of ordinary skill in the art could not have described such devices at the time the applications were filed because the evidence presented at trial clearly established that laser and CCD cameras did not exist in 1956 or 1963. Id. Pursuant to similar reasoning, the court rejected Lemelson's construction of "computer analyzing" or

"computer processing" as referring to a general purpose, programmable computer, and it instead adopted Symbol's definition of "a computing circuit capable of performing a simple mathematical task such as subtraction." Id. Because Symbol's devices used modern tools such as laser and CCD cameras and programmable computers, and because the district court refused to construe Lemelson's claim terms as encompassing such devices, the court held that Lemelson failed to prove that Symbol's products infringed the asserted patent claims. Id. at 1164-65.

The district court also considered the definition of a person of ordinary skill in the art and whether Lemelson's specification would enable such a person to make and use the claimed inventions. Symbol presented expert witness testimony asserting that, for purposes of the asserted patents, a person of ordinary skill in the various fields of the invention is an electrical engineer with approximately two years of experience in signal processing and television electronics. The court was persuaded by Symbol's arguments and adopted that definition of the person of ordinary skill in the art, rejecting Lemelson's argument that the hypothetical person should instead be a "team" of experts skilled in scanning and data acquisition, data analysis and computing, and manufacturing or production engineering. The court also noted that Lemelson's own experts acknowledged that a person fitting the court's description would not have been enabled to practice the inventions of the claims, and the court accordingly held that the claims were invalid for lack of enablement under § 112.

Finally, with respect to other issues raised in the case, the court rejected Symbol's defenses of anticipation and inequitable conduct as not sufficiently supported by the evidence. It determined that it was unnecessary to consider whether the

specifications met the § 112 written description requirement because it had rejected Lemelson's claim construction on which that defense rested. Additionally, the court rejected Lemelson's claim for attorney fees to compensate for Symbol's alleged unreasonable litigation tactics. Id. at 1165-67. Consequently, the district court held that Lemelson's patents were invalid for lack of enablement, unenforceable due to prosecution laches, and not infringed. Lemelson appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Lemelson argues that the district court erred by holding that the 1963 application was not entitled to the benefit of the priority date of the 1954 and 1956 applications. It asserts that the 1963 CIP application met the statutory requirements set forth in 35 U.S.C. § 120 for a claim of priority: it contained a reference to the prior application, identified it by serial number and filing date, and indicated the relationship between the applications. Lemelson thus contends that the 1963 application explicitly stated that it was a CIP and properly referenced the earlier applications in order to claim priority. It also asserts that it was reversible error for the court to resolve the issue of priority without engaging in a proper claim-by-claim analysis.

Symbol responds that the 1963 application's mere reference to the 1954 application was not sufficient for entitlement of priority. It argues that more than mechanical compliance with the statute is required for entitlement to priority and that § 120 requires that a "substantial portion" of the earlier application must be repeated in the later application. Symbol states that while the 1954 application contains 170 pages of text and 104 figures, the 1963 application contains 118 pages of different text and 28

different figures, and it does not repeat any of the text or figures of the 1954 application. Symbol also asserts that Lemelson cannot incorporate "essential material" from an abandoned reference.

Lemelson also argues that the district court erred in its enablement decision because it improperly defined a person of ordinary skill in the various arts of the disclosed inventions. Lemelson maintains that the specifications involved three distinct fields, and that the skilled artisan of the claimed inventions must combine knowledge of multiple fields, in effect, be a team of experts and not a single electrical engineer. For those reasons, Lemelson argues that the district court's determination that the claims were not enabled was legal error.

Symbol responds that the district court explicitly found the testimony of Symbol's expert witness, Dr. Horn, more credible than that of Dr. Williamson, Lemelson's expert, regarding the definition of the skilled artisan. Additionally, it cites Lemelson's own statements in the specifications and the prosecution history that support the conclusion that one skilled in the art is properly defined as an electrical engineer, refuting Lemelson's present position that such a person should be construed to be a team of experts. Symbol contends that, under Lemelson's theory, every minor reference to a particular field in a specification could expand the standard for judging a patent's compliance with the statute, greatly complicating the administration of the patent laws. Symbol argues that the court's characterization of the person of ordinary skill in the art was not in error and should be affirmed.

Lemelson additionally argues that the district court abused its discretion in holding the asserted patents unenforceable for prosecution laches. Lemelson argues

that the district court solely relied on the delay in the issuance of the asserted patents. It claims that it provided justification for the time that elapsed between the filing of each of its patents and their eventual issuance, citing such events as restriction requirements by PTO examiners and time pending review by the PTO. Furthermore, Lemelson argues that the court agreed that Symbol had not proven that Lemelson intentionally delayed issuance, a fact that should have been dispositive of Symbol's equitable defense.

Symbol responds that the court considered many factors in addition to the "sheer elapsed time" of Lemelson's prosecution, including the prosecution histories of the asserted claims, Lemelson's conduct before the PTO during decades of prosecution, the independent progress of other innovators in the field of machine vision and bar code technology, and the prejudice to the public resulting from Lemelson's delay. Those reasons, Symbol argues, were well supported by evidence and properly considered by the court. It also contends that the laches standard does not require "intentional" delay, but only that which is "unreasonable and unexplained."

Lemelson finally argues that the district court erred in its claim constructions and in excluding depositions of the deceased inventor and other evidence. It additionally challenges the court's holding of a lack of infringement.

We agree with Symbol that the court did not abuse its discretion in holding that Lemelson's patents are unenforceable under the doctrine of prosecution laches. The doctrine of prosecution laches is an equitable defense, Symbol II, 277 F.3d at 1366 (quoting P.J. Federico, Commentary on the New Patent Act, 75 J. Pat. & Trademark Off. Soc'y 161, 215 (1993)), and we review the judgment of the district court on that

issue for an abuse of discretion, <u>Bridgestone/Firestone Research v. Auto. Club</u>, 245 F.3d 1359, 1361 (Fed. Cir. 2001). This court has earlier held in this case that prosecution laches may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution. <u>Symbol II</u>, 277 F.3d at 1363, 1368. We did not set forth any firm guidelines for determining when such laches exists, but left this determination to the district court on remand, as the defense exists as an equitable doctrine. In so doing, however, we discussed precedent such as <u>Woodbridge v. United States</u>, 263 U.S. 50 (1923), and <u>Webster Electric Co. v. Splitdorf Electrical Co.</u>, 264 U.S. 463 (1924), wherein the Supreme Court applied the doctrine of prosecution laches to render patents unenforceable. Although those cases involved a nine-and-a-half-year delay and an eight-year delay, respectively, the Court later held that the presumptive two-year time limit referred to in <u>Webster</u> was dictum because it was not directly applicable to the issue of laches on which the case was decided. Thus, there are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions. The matter is to be decided as a matter of equity, subject to the discretion of a district court before which the issue is raised.

There are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated. The doctrine should be applied only in egregious cases of misuse of the statutory patent system.

Filing a divisional application in response to a requirement for restriction is one such legitimate reason for refiling a patent application. Given one's entitlement to claim

an invention in various ways, and the PTO's practice of limiting its examination of an application to only one of what it considers to be several inventions, it cannot, without more, be an abuse of the system to file divisional applications on various aspects that the PTO has considered to be separate and distinct from each other. See 35 U.S.C. § 121 (2000); 37 C.F.R. § 1.142 (2005); see also Manual of Patent Examining Procedure §§ 803, 818 (8th ed., rev. 2 2004). That is so even when one defers the filing of a divisional application until just before the issuance of the parent application. Such action is expressly allowed by statute. 35 U.S.C. § 121. Moreover, one might legitimately refile an application containing rejected claims in order to present evidence of unexpected advantages of an invention when that evidence may not have existed at the time of an original rejection. Commonly, and justifiably, one might refile an application to add subject matter in order to attempt to support broader claims as the development of an invention progresses, although entitlement to an earlier filing date for any claimed subject matter may of course be necessary to avoid a statutory bar created by intervening events outlined in 35 U.S.C. §§ 102 and 103. One may also refile an application even in the absence of any of these reasons, provided that such refiling is not unduly successive or repetitive.

However, refiling an application solely containing previously-allowed claims for the business purpose of delaying their issuance can be considered an abuse of the patent system. See Bogese, 303 F.3d at 1368-69 (discussing Ex parte Hull, 191 USPQ 157 (Bd. Pat. App. & Interfs. 1975)). In particular, multiple examples of repetitive refilings that demonstrate a pattern of unjustifiably delayed prosecution may be held to constitute laches. Taken singly, the delay in the prosecution on any one particular

application will surely not appear to merit relief by the courts in equity. On the other hand, an examination of the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims, may trigger laches.

The district court here heard considerable evidence that that was what occurred in this case. The court found that an 18- to 39-year time period had elapsed between the filing and issuance of the patents in suit. Symbol III, 301 F. Supp. 2d at 1355. That period of time is not what is contemplated by the patent statute when it provides for continuation and continuation-in-part applications. Patent applications should normally be permitted to issue when they have been allowed and the statutory requirements complied with. The court also found that Lemelson had engaged in "culpable neglect" during the prosecution of these applications and it recognized the adverse effect on businesses that were unable to determine what was patented from what was not patented. Id. at 1356. It noted that the Lemelson patents occupied the "top thirteen positions" for the longest prosecutions from 1914 to 2001. Id. The court also cited the existence of "intervening private and public rights." Id. at 1357. It concluded that "[i]f the defense of prosecution laches does not apply under the totality of circumstances here, the Court can envision very few circumstances under which it would." Id. at 1356. Under those circumstances, we can hardly conclude that the court abused its discretion in holding the involved patents unenforceable on this ground. The court thoroughly examined the facts and the equities, and it exercised its discretion reasonably. We therefore affirm the district court's holding of unenforceability.

In view of the fact that we are affirming the district court's judgment of unenforceability for reasons of prosecution laches, we need not review Lemelson's claims that the district court erred in its conclusions concerning entitlement to earlier priority dates, enablement, claim construction, infringement, or other issues that have been raised in this appeal, some of which otherwise might have required remand. Those issues are therefore moot.

## CONCLUSION

Because the court did not abuse its discretion in holding that Lemelson's asserted patents are unenforceable under the doctrine of prosecution laches, we affirm the judgment of the district court.

## AFFIRMED